[Filed July 8, 1891.]

MARGARETTA MARSHALL ET AL. *v.* ANNIE M. WILLIAMS.

EQUITY OF REDEMPTION—STATUTE OF FRAUDS—EQUITABLE ESTOPPEL.—An equity of redemption in real property, although dependent upon an instrument in form an absolute deed, but in fact a mortgage, cannot be released or conveyed except by a deed or writing as required by the statute of frauds; but where both parties, on final settlement of the indebtedness secured by such an instrument, intended that the same should operate as an absolute conveyance of the land to the mortgagee in payment of the debt, and the grantor, having superior knowledge o such matters, and possessing the confidence of the grantee, deliberately represents the instrument to be sufficient in law to pass the title without further conveyance, and the grantee relies upon his statement and opinion thereabout, and on account thereof does some act otherwise against the interest of the grantee, such as remitting a portion of the debt, parting with some of the security, or surrendering evidences of the indebtedness, the grantor and his heirs will be equitably estopped from asserting the instrument to be anything else than an absolute deed.

ON REHEARING.

ESTOPPEL—EVIDENCE.—In order to enforce an estoppel against the legal title to land, the case relied on to work the estoppel must be proven by clear, precise and conclusive evidence, so that the facts constituting the alleged estoppel may be clearly and satisfactorily established.

Multnomah county: L. B. STEARNS, Judge.

Defendant appeals. First reversed; on rehearing, affirmed.

*W. W. Thayer,* and *E. B. Williams,* for Appellant.

*G. G. Gammans,* and *C. B. Bellinger,* for Respondent.

BEAN, J.—This is a suit to declare a deed, absolute in form, to be a mortgage, and for leave to redeem. On January 11, 1884, plaintiff's intestate, George Marshall, being indebted to his sister, the defendant, in the sum of $15,203.13, as evidenced by two promissory notes for $9,000 and $6,203.13, bearing interest at the rate of nine and ten per cent per annum, respectively, as security therefor, conveyed to her by absolute deed one hundred acres of land near St. Johns in Multnomah county, and two lots in Couch's addition to the city of Portland. On June 17,

1887, no payments having been made on said indebtedness, and the principal and interest thereof amounting to over $21,000, the defendant came from her home in The Dalles to Portland to obtain further security for her money, or to settle and adjust the same before the death of her brother, who was then ill and not expected to survive but a short time. The property held by her as security was worth not to exceed $15,000 at that time, and was all the property owned by Marshall. A settlement was effected whereby it was agreed that defendant should take the land near St. Johns at $10,000, the two lots in Couch's addition at $5,000, and Marshall and wife should give a new note for $5,000, due two years after date, bearing six per cent interest, secured by mortgage on property belonging to the wife, and defendant should cancel the remaining $1,100 of the debt. Pursuant to said agreement, Marshall and wife executed the new note and mortgage for $5,000, and defendant surrendered and delivered up the promissory notes she held against Marshall. It was proposed at the time by defendant that Marshall should execute a new deed for the St. Johns and Couch addition property, but after examining the deed then held by defendant, he said: "This deed is all right; it isn't necessary to make out a new deed." The defendant relied upon this statement, and did not insist upon a new deed, and both parties considered the matter fully settled and adjusted. After said settlement and on the same day the defendant executed to Marshall a written power to sell said property as her agent, which was to continue for two years, but he died within a few days thereafter. Subsequent to the death of Marshall, the defendant went into possession of the property by her tenant, and has so continued in such possession, receiving the rents and profits, and paying the taxes thereon. The plaintiffs, who are the heirs of Marshall, and several of whom were present at the settlement, recognized defendant as the absolute owner of the property, and asserted no claim thereto until June, 1889, when, owing to the rapid advance in real estate,

it had largely increased in value, and their attorney employed to attend to some matters connected with the estate discovered the defect in the title. This suit was instituted without first making any tender or offer to redeem.

It is admitted that although the conveyance from Marshall to defendant in 1884 was in form an absolute deed, it was in fact a mortgage, and the right of redemption could not be released or transferred by a mere parol understanding or agreement between the parties. An equity of redemption is inseparably connected with a mortgage; and so long as the instrument is one of security, whatever its form, the borrower has in a court of equity a right to redeem upon payment of the loan unless precluded by his own conduct, and this right cannot be waived or abandoned by any stipulation made at the time. The mortgagor may release the equity of redemption to the mortgagee, but being an interest in real estate, it can only be transferred or relinquished by a writing executed as required by the statute of frauds. This rule applies as well to a deed absolute in form intended as a mortgage as to an ordinary mortgage. (*Peugh* v. *Davis*, 96 U. S. 332; *Odell* v. *Montross*, 68 N. Y. 499; *Shattuck* v. *Bascom*, 105 N. Y. 39; *Barry* v. *Hamburg Ins. Co.* 110 N. Y. 1; *Teal* v. *Walker*, 111 U. S. 242; *Besser* v. *Hawthorne*, 3 Or. 129.)

While conceding the doctrine as above stated, defendant contends that in view of the facts in this case, as shown by the evidence, plaintiffs should not be permitted by a court of equity to redeem, and this is the only question for our consideration.

In case of an ordinary mortgage, the mortgagor is entitled as a matter of right to redeem the property pledged. In such case the right of redemption is given by positive agreement, and the fact that the transaction is a mortgage is recognized at law as well as in equity; but where a deed, absolute in form, is given as security for the payment of a debt, the mortgagor is compelled, under the system of jurisprudence in this state, to seek redress in a court of equity if

his confidence is abused.  It is the settled rule and practice
of courts of equity to set aside a formal deed, and allow the
grantor to redeem upon proof even by parol that the con-
veyance was not a sale but merely a security for a debt, and
therefore a mortgage.  But as to the grounds upon which
this equitable power is exercised, there is much diversity of
opinion.  In the earlier cases both in England and America
it was exercised solely upon the grounds of fraud, accident
or mistake, which are ordinary grounds of equity jurisdic-
tion.  In several of the states these are still the only recog-
nized grounds of equitable interference in such cases, while
in others it is declared that it is a fraud on the part of the
grantee to insist that the conveyance is absolute when in
fact it was intended to secure the payment of a debt.  All
agree, however, that fraud or quasi fraud, whether in the
original transaction, the subsequent conduct of the grantee
in attempting to retain the property or inherent in the
transaction itself, is the ground for relief in equity.

Ordinarily a court of equity will set aside an absolute
deed, and allow the grantor to redeem as a matter of course
upon proof of the fact that it was intended as a security
for the payment of money, but it will refuse to interfere
actively in his behalf when the evidence discloses that
instead of preventing a fraud as against the grantor it
would operate as a fraud and injustice upon the grantee.
Being compelled to ask the interposition of a court of
equity in his behalf, he must first have the standard of
equity applied to his own conduct.  If that condemn him
he must go out of court.  "He who comes into a court of
equity must come with clean hands," is a maxim rigidly
enforced and sternly applied to the conduct of any person
who seeks the aid of a court of conscience.  "One who
comes for relief into a court whose proceedings are intended
to reach the conscience of the parties," says Mr. Justice
WELLES, in *Hassam* v. *Barrett*, 115 Mass. 259, "must first
have that standard applied to his own conduct in the
transaction out of which his grievance arises.  If that con-

demn himself he cannot insist upon applying it to the other party." This rule is as applicable to a plaintiff in a suit to declare an absolute deed a mortgage and to be allowed to redeem, as in any other case, and he is under the same obligation to do equity as any other person who seeks redress in a court of equity. In *Booth* v. *Hoskins*, 75 Cal. 271, the court applied the maxim that "he who seeks equity must do equity," and held that the plaintiff was not entitled to a decree quieting his title against the claim asserted by the grantee under a deed intended as a mortgage until he had paid the debt and interest to defendant although it was barred by the statute of limitations. The grounds upon which courts of equity will declare that a deed, absolute in form, is in fact a mortgage, being purely equitable, it may and should be refused if the equitable considerations are wanting. The court will look into the facts of each case, and if from them it appear that plaintiff's conduct or representations subsequent to the execution of the deed have been such as to make it inequitable or unconscionable for him to be allowed to redeem, it will refuse to interfere, but leave the parties in the situation in which it found them. The conveyance being in form a deed, purports to convey an absolute estate to the grantee, and it must be taken as the exponent of the rights of the parties unless some equity is shown which makes it unconscionable to so consider it. It is ordinarily sufficient to show that such a deed was intended as a security for a loan of money, but the grantor's subsequent conduct may have been such as to shut him out from offering evidence, or asserting in a court of equity that the instrument is not what it purports on its face to be.

Turning now to the facts, are plaintiffs in a position to ask the aid of a court of equity in their behalf? They stand in no better position than Marshall did, and unless he could if living maintain this suit they cannot. We think it is a fair deduction from the testimony that the settlement between Marshall and his sister was fair and just and made

in entire good faith.   Nothing was desired by either party but an honest and complete settlement of their affairs. This they both supposed had been accomplished.  Marshall was desirous of conveying the property in controversy to defendant, and supposed that the deed of January 11, 1884, being absolute in terms, was sufficient for that purpose, and so informed her when she asked for another deed.   He was a dealer in real estate and presumedly conversant with the forms and legal effect of conveyances, and she, relying upon his word and supposed knowledge, accepted the deed as sufficient to convey to her the legal title.   The matter was considered fully adjusted and settled by both parties, and in all probability no question would have ever arisen had not the prosperity of the city of Portland caused an unexpected advance in real-estate values, and Marshall's heirs conceived the idea of taking advantage of some technical defect in order to secure the advantage of such increase. Will a court of equity permit him or his heirs to say that the representation made to his sister is not true?   Because she confided in his word that a second deed was not necessary to convey to her the legal title, and was lulled into security, does it follow that although he was mistaken he can now in this suit assert the contrary?   To permit such a thing would certainly be the rankest injustice.   What could be more unjust or unconscionable than for him, after having induced the defendant to remit from the amount of money she had loaned him more than eleven hundred dollars, to postpone the payment of five thousand dollars of the remainder for two years at a materially reduced rate of interest, and to surrender up and cancel her notes on the assurance of Marshall that the property was hers, and that the deed she held was sufficient to convey the title, and then after she had taken possession of the property with the full assent of all parties, managed it for two years, contracted with Marshall and other parties regarding its use and disposition, had her money, which perhaps otherwise could have been profitably invested, tied up in the transaction all the

time,.to now, since the property has largely increased in value, come into a court of equity and in violation of his solemn assurances assert that the representations made by him were false. He by his heirs is in effect saying to a court of equity: 'It is true I made the settlement with my sister in good faith, and as between us the function of the deed as a mortgage ceased, but I supposed it being absolute in form was sufficient to convey the legal title, and so told her when she requested another deed. I was receiving from her all the property was worth, and she, confiding in my word and supposed knowledge, was satisfied and surrendered to me for cancellation the notes she held against me. By my permission and knowledge she went into possession of the property, managed and controlled it as owner, and I did not suppose or claim that I owned any interest therein, but contracted with her as owner for the agency for the sale of the property. But now the property having largely increased in value, I ask a court of equity to aid me in avoiding my solemn agreement and representation, because I have since learned that my agreement was void because not in writing, and my representation was false.'

No argument is required to show that under such a state of facts, to grant the relief sought in this case would be inequitable, unjust, and unconscionable. These facts strongly bear the impress of an equitable estoppel, and present such a case on the part of plaintiffs as will cause a court of equity to refuse to interfere actively in their behalf. They are seeking redress in a court of conscience, and must have the standard of equity applied to the conduct of their intestate and of themselves. Marshall induced his sister to believe the deed she had was sufficient to convey the legal title, and she having been misled thereby to her injury, he or his heirs will not be heard to say in this suit that such representation is not true. As between them, so far as this case is concerned, it is the truth.

We recognize to its fullest extent the principle, "that once a mortgage always a mortgage," and that Marshall's

representation or statement did not or could not change the legal effect of the deed to his sister; but having deliberately made the representation that the deed was sufficient to convey the legal title, and she having relied upon its truth, he or his heirs will now be precluded from giving evidence to the contrary. In view of the conclusion we have reached on the merits, it is unnecessary to consider the objection to the complaint urged by defendant, but it would seem that a bill to redeem must allege a tender of the amount the plaintiff concedes to be due on the mortgage debt, or must offer to pay whatever may be found to be due, and the omission is ground for demurrer. (2 Jones on Mort. § 1095.)

Nor do we think there was reversable error in allowing the amended answer to be filed. The clause was still pending before the referee, and in the absence of a contrary showing, we must presume that plaintiffs had an opportunity to contest the allegation of the amended answer if they were so advised, and besides, the facts upon which our decision is based are substantially stated in the original answer. The granting or refusing amendments rests in the discretion of the trial court and can only be reviewed here for an abuse of such discretion.

Decree of court below reversed and complaint dismissed.

[Filed November 17, 1891.]

ON REHEARING.

BEAN, J.—On the former hearing of this case, the facts as found by the referee were not seriously controverted, and consequently were in the opinion assumed to be established by the evidence. It is now urged by respondents that the alleged settlement between Marshall and his sister, and the declaration of Marshall that the deed was sufficient to convey the legal title, are not proven by the testimony. Their claim is, that the agreement was one of further security and extension of time in which to pay the debt, and there was no intention to convey the legal title to defendant.

Where the title to land is involved, in order to enforce an estoppel against the legal title, as is attempted here, the case relied on to work the estoppel must be clear, precise and unequivocal on the facts. (2 Herman on Estoppel, 871; *Jackson* v. *R. R. Co.* 4 Del. Ch. 180.) The reason is, that the estoppel is contrary to the statute of frauds, which requires a deed or writing to convey title; and as the estoppel is to have practically that effect, parol evidence in support of it ought not to be of a loose or doubtful character, otherwise the effect would be to defeat the object of that statute and unsettle titles.

As was said by Andrews, J., in *Trenton Banking Co.* v. *Duncan,* 86 N. Y. 230: "The authorities establish the doctrine, that the owner of land may by an act *in pais* preclude himself from asserting his legal title. But it is obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is opposed to the letter of the statute of frauds, and it would greatly tend to the insecurity of titles if they were allowed to be affected by evidence of light or doubtful character." And, "moreover it may be added," says Chancellor Bates, "that to warrant the interference of the court with the legal right or title of the party, the case relied on to work the estoppel must be clear beyond doubt, upon the facts." (*Jackson* v. *R. R. Co. supra.*) Hence when an estoppel is urged which is to preclude the legal owner from asserting his title, the courts insist that the evidence must be clear, precise and decisive, so that the facts constituting the alleged estoppel may be clearly and satisfactorily established.

The claim of defendant is sought to be sustained, principally by the testimony of herself and her business manager, Sparks, given in response largely to leading and suggestive interrogatories. But assuming that the evidence for defendant proves that there was a settlement as claimed, and an understanding and agreement that the old deed executed as a mortgage was paid and became *functus officio,* and that

Marshall's declaration, that such old deed was sufficient to convey the title, and her reliance upon it, induced and caused her to accept and retain such old deed as the evidence of her title, this evidence is directly contradicted by five other witnesses of equal credit, who are admitted to have been present at the time of the alleged settlement, and who are as equally certain that the agreement was only to furnish more security and for an extension of time, and not intended to change the character of the transaction, or the relation of the parties. That defendant supposed plaintiffs had some interest in this property after Marshall's death, is indicated by her reply to the letter of plaintiff, Wm. Marshall, asking for a renewal of the contracts of sale, in which, while she claims to be the owner of the property and refuses to renew the contracts, she says, "when a sale is made I will endeavor to make a settlement satisfactory to them all."

Excluding Hughes' testimony, who was consulted professionally by Marshall after the date of the alleged settlement concerning the final disposition of his property, and to whom he stated with a sense of impending death that he owned the property in dispute, subject to the lien of his sister's debts, which would be conclusive if admissible, the number of witnesses and the preponderance of the evidence are in favor of the theory of the plaintiffs. Besides, that contention makes the transaction consistent and the evidence harmonious. There is no pretense of any unfair dealing or intended wrong. For their own purposes the transaction, which was a security for a debt, was put in the form of an absolute deed.

The defendant came from her home in The Dalles to Portland, where she learned her brother could live but a short time, confessedly to collect her money or obtain more security, and it was in futherance of this demand that an aojustment of their affairs took place. According to all the testimony, she got more security; the $5,000 mortgage on the property of Mrs. Marshall, in addition to the security upon the land contained in the old deed. The old deed was

sufficient for a mortgage, and if Marshall's declarations applied to it in that sense, there was no necessity to renew it. His declarations were not only true, but were consistent with the transaction, viewed as a security. To hold otherwise, we are put in the dilemma of supposing Marshall declared the transaction to be something different from what as a real estate broker he knew was the fact.

As there is no imputation in the evidence of any wilful intention to deceive, it is more consistent to construe his declaration with that view which would not mislead but harmonize with honesty and fair dealing and which was in accordance with the purpose of her visit, to obtain further security.

A good deal of stress was laid upon the fact that at the time of or after the settlement, the defendant gave Marshall a contract for the sale of the land for two years. In other words, authorized him to sell it and retain as his compensation all above the debt and interest. As the transaction stood, there was no other way for him to act as a real estate broker of the land. To conserve their own purposes, the property always stood as to the outside world as the property of the defendant. Either before or after the settlement, if he wished to sell it, he would need a contract of sale from her to exhibit to intending purchasers as his right to do so. This was the only way he could deal with purchasers upon the record. Hence it was perfectly consistent with the transaction as a security and a legal necessity, as the record stood, for him to take a contract of sale from her, not as evidence of title between them but with the world with whom he proposed to deal. This view is further aided by the fact that the sum mentioned in the contracts as the amount to be paid her only covered the debt and interest.

Much was claimed for the fact that after the settlement defendant delivered her notes to Marshall. This is denied by plaintiffs, and diligent search among Marshall's papers fails to discover the notes. But if true, it is at most only a circumstance in her favor, tending to support her theory,

and is not sufficient to overcome the positive testimony of the witnesses for plaintiffs and the other facts in this case. The evidence does not disclose that anything was said about these notes at the time of or during the negotiations of the parties, as would most probably have been the case if the settlement had been intended to be final. It was not until after the matter had been fully consummated, and the necessary papers had been executed and delivered, that Marshall went in his buggy to the dock, asked for and received the notes from defendant, as she was about to take the transfer boat for home. What his motives were in desiring the notes, are only a matter of inference from the other facts in the case. He knew he could live but a short time, and perhaps in thinking the matter over it occurred to him that it might complicate the settlement of his affairs after death if defendant were permitted to hold a deed to the property and his overdue notes for $5,000 more than her debt, as would have been the case if she had retained the old notes and the additional note for $5,000. Besides, he may have supposed with reason that because the debt evidenced by these notes had been readjusted, $5,000 thereof being secured by the notes and mortgage of Mrs. Marshall, and the remainder apportioned between the two pieces of property, and the time for the payment thereof extended, he was entitled to the possession of the old notes, which were overdue and no longer represented either the amount or date of payment of his debt. She had a deed to his property, and the contracts of sale which he had from her clearly showed the amount of his debt chargeable against this property and the rate of interest thereon. The only way he could divest her of her title or lien, was by the payment of his debt and interest, so that she was perfectly secure without the notes, which, if she had retained, no longer correctly evidenced his debt as readjusted; that plaintiffs recognized the defendant as the owner of the property and allowed her to go into possession after Marshall's death, is we think satisfactorily explained by the evidence.

They consulted John Marshall, a brother of deceased, in whom they had confidence, concerning a sale of this property which they desired to effect, and were informed by him that defendant had a deed to the property, and they owned no interest therein. While they did not so understand the matter, they acted upon this information, supposing it to be correct, and that they were mistaken as to their rights until they were otherwise advised by counsel. In such a case, when a transaction, viewed in all its parts, can be made consistent, and the opposite view asserts a negligence which would operate as a constructive fraud, when the occasion and the parties as disclosed by the evidence indicate an active desire to do right, it seems to us, in view of the facts, that courts look with jealousy upon contracts between mortgagor and mortgagee for the surrender of the equity of redemption; and as the rule requires clear and precise proof, when the title to land is to be effected by parol, the facts in this case are too uncertain to warrant us in precluding the plaintiffs from asserting their title when they offer and are willing to do full equity by the payment of the debt and interest in full.

It follows that the decree heretofore entered in this court must go for naught, and a decree be entered here allowing plaintiff sixty days in which to redeem, and upon failure to do so, the land be sold as on execution to satisfy the decree and costs.

STRAHAN, C. J. (dissenting.) — I regret that I am unable to concur in the conclusions reached by my associates in the foregoing opinion. I concurred in the opinion first announced and adhere to it. In addition to this, I am unwilling to sanction the practice pursued in this case in this court. On the first hearing, it was substantially assumed that the findings of fact of the learned referee were correct, and the real contention was on questions of law. This court had a right then to assume that the facts were correctly found, and the opinion was predicated on that assumption.

On the rehearing, the findings of the referee were attacked because the facts were not justified by the evidence, and in this the present opinion of my associates concurs. Having submitted the case on the theory that the findings of fact were correct, and having been defeated on the questions of law arising on those facts, I do not think the party ought to be permitted to call in question the theory upon which the case was first tried.