Argued 18 March; decided 14 April, 1902.

## STARR *v.* KAISER.

[68 Pac. 521.]

DEED AS A MORTGAGE—FRAUDULENT CONVEYANCE.

1. A quit claim deed executed by a husband, in which his wife joined without knowing the nature of the instrument, was given as security for the payment of a debt. It was agreed between the husband, the creditor, and the grantee that the property should be sold when the husband desired it, and the debt paid. The property was conveyed by the grantee, pursuant to the direction of the husband, and upon the payment of the debt. The grantee in the second conveyance did not enter into possession of the premises. The latter deed recited a nominal consideration, and the evidence did not disclose what amount, if any, was paid for the premises. *Held,* that the second conveyance was fraudulent as against the wife, who subsequently purchased the premises at execution sale under a judgment against the husband for separate maintenance.

FRAUDULENT CONVEYANCE—GOOD FAITH OF GRANTEE.

2. A grantee in a conveyance from a husband, pending a suit against him by his wife for separate allowance, who had knowledge of the pendency of the action, and who accepted the conveyance without the wife joining therein, cannot claim the premises as an innocent purchaser.

From Multnomah: JOHN B. CLELAND, Judge.

Suit by Nannie N. Starr against Kate M. Kaiser and another. From a decree for plaintiff, defendant Kaiser appeals.                                             AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. J. F. Boothe.*

For respondent there was a brief over the names of *John F. Logan,* and *Henry E. McGinn,* with an oral argument by *Mr. Logan.*

MR. JUSTICE WOLVERTON delivered the opinion.

On November 25, 1899, the plaintiff commenced a suit against William L. Starr, her husband, for separate support, and on February 20, 1900, obtained a decree against him for $35 per month, dating from the commencement of the suit, and to continue while he remained separate and apart from her, or

until the further order of the court, which decree was docketed
two days later. On July 14, 1899, Starr and plaintiff executed
and delivered to the Associated Banking & Trust Co. a writing,
in form a quitclaim deed to lots 5 and 6 in block 129, Caruth-
er's Addition to Portland, hereinafter referred to as the
"Home Property." This instrument was recorded on the 22d
of September following, and on the same day the trust com-
pany quitclaimed said lots to Kate M. Kaiser, reciting a con-
sideration of $1 therefor; and on January 26, 1900, Starr exe-
cuted and delivered to Mrs. Kaiser a deed to lot 15, block 1,
Greenridge Addition to Portland, reciting a consideration of
$50, he being the owner of both these pieces of property prior
to the attempted transfers. On August 21, 1900, execution was
issued on the decree, by virtue of which all of Starr's right,
title, and interest in and to the home property were sold; the
plaintiff becoming the purchaser at such sale, which was there-
after confirmed. She was in possession at the time, and, con-
tinuing therein, Kaiser commenced an action in ejectment, and
to this a cross bill was filed by plaintiff, Starr being made a co-
defendant and brought into the suit; and thus are presented
the matters for our present inquiry. The object of the cross
bill is to set aside these deeds as fraudulent and void,—the first
as a cloud upon plaintiff's title acquired under the execution,
and both as a hindrance to the enforcement of her decree for
support.

With reference to the deed executed to the trust company,
the plaintiff testifies that she signed it, but did not know at the
time what it was; that at the same time she executed a deed
with her husband to other property; that she continued in the
possession of the house,—had a key thereto,—and came and
went as she pleased; that on the day she signed the deed she
received from her husband $100, which she intended to use on
a trip to California; that on the next day, she and her husband
having had some trouble, he told her that she need not come
back, as he had sold the place, which was the first information
she had that they had deeded the property, and she at once
tried to get it restored, but was unsuccessful; and that at an-

other time Starr told her that he had mortgaged the property to the trust company to secure his attorney's fees.

Judge Pipes testifies that Starr owed him a fee for legal services, to secure the payment of which he made a quitclaim deed to the home property in favor of the trust company; that the fee, amounting to $375, or near that, was afterwards paid, being about the time the trust company made a deed to Mrs. Kaiser. Witness thinks that Starr paid the money himself, and, being asked again as to the purpose of the deed from Starr to the trust company, replied: "This deed was made to the Associated Banking & Trust Co. at our request by Mr. Starr, to secure me in the payment of the fee that I have spoken about." On cross-examination he further states that at one time they gave Honeyman, a real estate agent, an order to sell the property; that he was willing to have the deed made to Mrs. Kaiser, provided Starr would pay his fee; that the deed was made at Starr's request; that it was understood that, whenever desired, the property could be sold, or when Starr desired to sell it the money should be paid, and the witness was confident that the property was placed in the real estate agent's hands with Starr's consent.

Arthur P. Tifft testified that he was the secretary of the trust company; that the deed in question was received by the company, in trust to secure a debt due to Judge Pipes, and in trust for William L. Starr; that it was not given as an absolute deed; that he executed the deed to Mrs. Kaiser upon a written order from Judge Pipes and Mr. Starr; that there were no conditions imposed upon the company, except as trustee, the property to be deeded upon the order of these parties, and that it was put into the hands of a real estate agent for sale at the request of both Starr and Pipes; that Starr, Pipes, the attorney for defendant, and witness were present when the deed was turned over, and that the money was paid at the same time; that Mrs. Kaiser was in the office once, but whether at this time he could not say.

Mrs. Kaiser was called as a witness for the plaintiff, and testified that she had received a deed from Starr to the Green-

ridge property in January or February, 1900; that she paid
$50 therefor; that she never owned any property in the state
before; that she did not herself pay the money, but that Mr.
Kaiser did for her; that he bought the home property for her
from the trust company, and paid the money; that he told her
that he was going to buy it, and that he had put most of his
property in her name; that he did not give her the money,
but paid for it himself; that she never had possession;
that Starr was an intimate friend of hers, but she knew noth-
ing about his affairs; that she was a witness in the suit by Mrs.
Starr against her husband, but did not know about the decree.
This is, in substance, the evidence of plaintiff. The defend-
ant offered none, except to show that the plaintiff signed and
acknowledged the deed of July 14, 1899, given to the trust
company.

1. The plaintiff alleges fraud, and must establish it if she
would prevail; the burden of proof being with her. It is
maintained by her that the writing executed and delivered to
the trust company was not in fact a deed, but intended by the
parties concerned, and given and accepted, as a mortgage to
secure the payment of a fee due Judge Pipes for legal services
rendered the defendant Starr, and for no other purpose;
that, at the date of the conveyance by the trust company to
Mrs. Kaiser, Starr paid the amount due Pipes, which dis-
charged and extinguished the mortgage, but that instead of
having the same canceled and surrendered, as he should, in
good conscience, have done, Starr conspired with Mrs. Kaiser
to cheat, wrong, and defraud the plaintiff, and procured her
to take the deed from the trust company to said property, he
at the same time directing the company to execute it; that said
deed was voluntary and without consideration, and intended
to cover up the property, and prevent plaintiff from enforcing
her claim for support. This concerns the home property. As
to the lot in Greenridge Addition, it is maintained that the
deed thereto was also voluntary and without consideration,
and given and accepted for a like purpose.

The defendant Kaiser, who alone prosecutes this appeal,

contends that the deed to the trust company was executed and delivered, and so intended, as a deed of trust, and that by the agreement of the parties concerned the company was fully authorized to sell the property and convey title, and that out of the proceeds the claim of Judge Pipes was to be discharged, and the surplus, if any, to be paid over to Starr;. and hence that she acquired a good title under the deed from the trust company. The Greenridge property she claims to have purchased *bona fide,* for value. The defeasance, trust agreement, or whatever arrangement was made or entered into, was entirely by verbal understanding; and it is suggested that the trust relations, except to show that the deed was in fact a mortgage, could not be established. But the trust to convey title has been executed, if such a relation existed, and the objection is without potency. If it was sought to enforce an unexecuted trust, and it became essential to establish it, a writing declarative thereof would have been necessary, as it could not have been proven otherwise, but such is not the purpose of the defendant. So that the authority of the trust company to make the conveyance in question depends upon the verbal understanding of the parties, and is not affected by the statute of frauds.

No one attempts to state in detail all the terms and conditions of the verbal agreement entered into between Starr and the trust company. Judge Pipes states its purpose very concisely. He says that it was to secure the payment of his fees, and this he reiterates with emphasis; and Mr. Tifft is hardly less succinct and comprehensive in his asseverations to the same effect. He says the writing was not given as an absolute deed. There was an understanding that whenever it was desired, or Mr. Starr desired, to sell the property, it could be sold, and that it should be deeded upon the written order of Starr and Pipes; but how and in what manner the transfer of title should be made is not defined. This is about all the light we have touching the terms and conditions of any trust agreement that may have been made or entered into. The central idea attending the transaction was manifestly to secure the

payment of the debt or obligation, and not to convey title by deed absolute. Other conditions than these have not been established, so that it is fairly, if not necessarily, inferable that the alleged trust deed was intended by the parties concerned as a mortgage, and must be so regarded. What the parties did afterwards cannot shed any light upon their agreement, as it constitutes no part of it. The property was placed in the hands of real estate agents for sale, but it was with the consent of Starr; and the deed to Mrs. Kaiser was made at his direction, so that nothing was done, apparently, without his concurrence. Once a mortgage always a mortgage; and the parties cannot devest it of its character, and treat it as a deed, so as to convey title, by any subsequent verbal understanding or agreement: *Marshall* v. *Williams,* 21 Or. 268 (28 Pac. 137). So that the acts of Starr and the trust company in deeding to Mrs. Kaiser, and treating the deed from Starr and the plaintiff to the company as a deed absolute, or as a transfer of title, did not make it so, or impart to it such potency. Although the deed to the trust company was given to a third party, it must be treated as a mortgage, nevertheless, and governed by the rules applicable to mortgages (*Thompson* v. *Marshall,* 21 Or. 171, 27 Pac. 957; *Martin* v. *Alter,* 42 Ohio St. 94), and therefore *Ladd* v. *Johnson,* 32 Or. 195 (49 Pac. 756), is without application.

The manner in which Starr procured plaintiff to sign the deed to the trust company is not above criticism. He undoubtedly conceived the idea at that time of deserting his wife, and was anxious to procure her signature. His purpose relative to the property probably did not then extend beyond the use of it as security for his obligation to Pipes, else he would have disposed of it otherwise, so that the device of having the trust company deed it to Mrs. Kaiser, and thus devest himself and wife of the legal title, must have been an afterthought. Having deserted plaintiff, he had reason to anticipate that she would make some demand upon him, either for separate support, or for alimony in a divorce proceeding. It is under these conditions that he dealt with Mrs. Kaiser. Now, so

far as disclosed by the evidence, Mrs. Kaiser was not present during the transactions relative to the execution of the deed by the trust company to her, except on one occasion, and it does not appear that she took any interest in the negotiations whatever. The money due Judge Pipes was paid over to him by Starr himself, and the deed was delivered in consequence thereof. Mrs. Kaiser states that her husband paid the money for her, and she relies upon the trust company's power and authority to make her a good title; but, as we have seen, it did not possess any such power or authority. She does not state to whom her husband paid the money,— presumably to Starr,—so that she was dealing with Starr, and willing to take whatever title he could procure for her by deed from the trust company. She could take no higher title than the trust company had, unless she was an innocent purchaser; but she does not make this defense, and cannot now avail herself of it. She and her husband were intimate friends of the Starrs, and manifestly knew all their troubles. Mrs. Kaiser admits as much. So we take it that she took the deed from the trust company, chargeable with as full knowledge as Starr himself had, and she stands in no better light. It is suggested that the deed to Mrs. Kaiser should, at any rate, be allowed to stand as security in superior rank to plaintiff's demand for the amount she was required to pay to discharge the obligation to Judge Pipes. The deed, however, which she holds, is of no consequence to convey title. But this aside, it does not appear how much she paid, or her husband for her, to Starr, if anything, for the property. She had an opportunity to state it, but did not, and it is very doubtful whether she or her husband paid anything. If they did, it could have been shown by her husband and Starr, neither of whom appeared as witnesses. True, if she saw fit, she had the right to rely upon the weakness of the plaintiff's case, and rest her defense there. But it is apparent from what has preceded that plaintiff has made a *prima facie* case entitling her to relief, sufficient to call upon the defendant to explain and show the good faith of the transaction,

and this she has not done.   Plaintiff is therefore entitled to the relief she asks.

2. As it respects the Greenridge lot, we do not understand that Mrs. Kaiser seriously contests the plaintiff's right to the relief demanded.   She took this deed while suit was pending for the separate allowance, with evident knowledge that the matter was pending, and accepted the same without the signature of plaintiff.   She could not claim as an innocent purchaser under these conditions.   The circumstances are so full of suggestion that she was in collusion with Starr for the purpose of hindering and impeding the plaintiff in enforcing her demand for separate allowance, and that she paid nothing for the deed, that it would be inequitable and unjust to allow it to stand. The decree of the court below will therefore be affirmed.

AFFIRMED.