## FERGUSON *v.* BOYD ET AL.

[No. 21,040. Filed May 3, 1907. Rehearing denied December 19, 1907. Modified opinion on petition for rehearing filed January 9, 1908, as of date December 19, 1907.]

1. MORTGAGES.—*Deeds.*—*Contracts to Reconvey.*—A deed absolute upon its face, executed along with a contract to reconvey upon repayment of the money borrowed, constitutes a mortgage. p. 542.

2. CONTRACTS.—*Oral.*—*Evidence.*—*Release of Mortgagor's Title.*— *Redemption.*—A mere equitable right of redemption in real estate may be released by a parol contract founded upon a sufficient consideration; and parol agreements are admissible in evidence to show that it would be unjust to permit such a debtor to redeem. p. 542.

3. DEEDS.—*Mortgages.*—*Defeasances.*—*Redemption.*—An undertaking, collateral to a deed absolute upon its face, merely to reconvey upon repayment does not constitute a technical defeasance, but does give to the grantor the right to redeem. p. 542.

4. MORTGAGES.—*Estates Created by.*—A deed absolute upon its face gives to the grantee a legal title, although a collateral contract provides for a reconveyance upon repayment of the money loaned. p. 543.

5. SAME.—*Deeds.*—*Contracts for Reconveyance.*—*Payment.*—*Effect.* —Where a contract, collateral to a deed absolute upon its face, provides merely for a reconveyance upon payment of the loan, the making of such repayment does not of itself reinvest the grantor with the legal title. p. 543.

6. SAME.—*Redemption.*—*Equitable Defenses.*—*Frauds, Statute of.* —The plaintiff, in a suit to redeem from a mortgage, cannot interpose the statute of frauds and thereby cut off equitable defenses. p. 546.

7. SAME.—*Equity of Redemption.*—*Release.*—*Frauds, Statute of.*— The surrender of the equity of redemption of the grantor in a deed absolute on its face, but accompanied by a written contract to reconvey upon payment of the money loaned, is not within the statute of frauds; and a conveyance or foreclosure was not necessary to extinguish the grantor's title. p. 546.

8. SAME.—*Equity of Redemption.*—*Assertion of.*—The assertion of a right of redemption, being an equitable proceeding, must be tried upon the equitable principle that he who seeks equity must do equity. p. 547:

9. LACHES.—*Redemption.*—*Mortgages.*—Where the owner of the equity of redemption of a mortgage orally contracts for the release thereof, appropriating the consideration paid, and has apparently, and without explanation, abandoned such right for nine

years, during which time the property increased greatly in value, the purchaser making permanent improvements thereon, the owner is guilty of laches precluding a recovery. p. 548.

10.  LACHES.—*Redemption.*—*Speculative Claims.*—Where the owner of an equity of redemption orally releases same, no advantage being taken of him, and the purchaser acts in good faith thereon, no effort being made for nine years to redeem, such claim of the right to redeem is speculative and not enforceable. p. 549.

11.  SAME.—*Loss of Evidence.*—The failure to enforce a right for such a length of time that valuable evidence might be lost to defendant and the property involved diminish materially in value, may wholly defeat plaintiff's right. p. 549.

12.  EVIDENCE.—*Parol.*—*Varying Written Contracts.*—Contemporaneous oral declarations cannot be received in evidence to vary or contradict the written instrument. p. 550.

13.  SAME.—*Parol.*—*Mortgages.*—*Accounting.* — Declarations made during the negotiation of a contract, in effect a mortgage, are admissible in a suit for a redemption from such mortgage and for an accounting, as showing the real intent of the parties as respects certain improvements made by the mortgagee, who was given possession. p. 550.

14.  TRIAL.—*Order of Proof.*—The order of proof is largely a question for the party presenting same. p. 550.

15.  EVIDENCE.—*Declarations of Others.*—*Legal.*—*Meaning of Mortgage.*—Declarations of a mortgagee to his assignee, in the absence of the mortgagor, as to what was orally said by the mortgagor, the assignee being absent, in the negotiation of a deed absolute upon its face with a separate written contract of reconveyance upon payment of the loan, are admissible on behalf of such assignee, in a suit to redeem and for an accounting, as showing his understanding of the papers and transaction. p. 551.

16.  CONTRACTS.—*Frauds, Statute of.*—*Right to Interpose Defense of.*—*Mortgages.*—In a suit by a mortgagor to redeem and for an accounting, he cannot raise the question of the validity of an oral contract between the mortgagee and his assignee. p. 551.

17.  EVIDENCE.—*Belief.*—Circumstantial evidence is admissible to prove the belief and good faith of a party. p. 552.

18.  SAME.—*Belief.*—*Foundations of.*—Oral declarations of a mortgagor, made four years before the taking possession of property, repeated by the mortgagee to his assignee at the time of the purchase, the mortgagor being absent, are admissible on the question of good faith and intent in the making of improvements on the property, the remoteness of time going to the weight of the evidence. p. 552.

19.  QUIETING TITLE.—*Legal Estates.*—*Proof of Equitable.*—*Judgment.*—*Amendments.*—The quieting of the title to real estate in

favor of an equitable owner, on allegations of a legal title, is harmless as to one having no title to such property, amendments to conform the allegations to the proof being permissible at any time, and therefore, presumptively, made. p. 553.

20. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 554.

21. SAME.—*Right Result.*—A decree of the circuit court will not be disturbed where a decree for the adverse party, under the evidence, would be more unjust than the one entered. p. 554.

From Rush Circuit Court; *Will M. Sparks,* Judge.

Suit by Horton J. Ferguson against James A. Boyd and another. From a decree for defendants, plaintiff appeals. Transferred from Appellate Court under subd. 2, §1394 Burns 1908, Acts 1901, p. 565, §10. *Affirmed.*

*Frank J. Hall, George W. Campbell* and *Ulric Z. Wiley,* for appellant.

*Robbins, Starr & Robbins,* and *Watson, Titsworth & Green,* for appellees.

GILLETT, J.—This was a suit instituted by appellant against appellees, to declare a deed a mortgage, and for an accounting with appellees as mortgagees in possession. Appellees answered by general denial, and they filed a cross-complaint against appellant to quiet title, to which appellant addressed a general denial. There was a trial by the court upon the issues thus formed, which resulted in a finding and decree for appellees. Error is assigned on the overruling of appellant's motion for a new trial. The chief contention of counsel for appellant is as to the sufficiency of the evidence to sustain the finding.

April 29, 1891, appellant conveyed to appellee Boyd, by general warranty deed, 360 acres of land in Rush county, for the recited consideration of $1,400, subject to a mortgage of $9,000. Contemporaneously with the execution of said deed appellant and Boyd, respectively described as the first and second parties, executed a writing, which recited Ferguson's conveyance of said land (describing it) by deed to Boyd, subject to said $9,000 mortgage, upon the consider-

ation of the payment by the latter of $1,400, laid out and expended in redeeming said land from sheriff's sale. The agreement then proceeded as follows:

"It is agreed that the party of the second part will aid in preventing a foreclosure of said $9,000 mortgage, if possible, and guarantee the payment of eight per cent interest instead of seven per cent until September 1, 1891, from this date, in order to prevent the owner from foreclosing the same, but the extra per cent shall not be paid in case foreclosure proceedings are begun and additional expense added to the debt. Now it is agreed by the parties hereto that the party of the second part will reconvey and convey back said real estate to the party of the first part on or before March 15, 1892, upon the repayment of said sum of $1,400, together with the interest thereon at the rate of eight per cent per annum, together with any and all amounts that the party of the second part may have paid on said $9,000 mortgage debt, and interest, but the party of the first part shall keep and retain possession of said real estate, and cultivate the same and keep it in good condition, until March 15, 1892, and shall give a mortgage on the growing crops, and on his corn crop, when planted, to secure the interest to the party of the second part, on said entire sums of money, so paid and with which said lands are encumbered. The parties hereby further agree that in case the party of the first part fails to pay all of said sums of money by March 15, 1892, the party of the first part shall deliver up full and peaceable possession of the aforesaid real estate, without process of law, and in reasonable condition. The party of the first part shall also pay the taxes that accrue out of the growing wheat on said lands."

The above instrument was not recorded. At the time of its execution Ferguson made a chattel mortgage to Boyd on his growing crop and on certain live stock, to secure the interest on $1,400, and the interest on such sum as Boyd might pay on the $9,000 mortgage which was a lien on said land. Further chattel mortgages were subsequently executed by Ferguson to Boyd, but, as the account on which they were executed may perhaps be said to be in dispute, we shall not

further refer to them. On the 1st or 2d day of May, 1891, appellee Smith agreed with Boyd to take a half interest with him in the transaction, and they subsequently purchased the $9,000 note and mortgage, taking an assignment of them to their banking firm, Boyd, Smith & Company, to hold for them. Smith did not take a deed, and his interest rests in parol. Many letters from Boyd, Smith & Company were introduced in evidence which tended to show that a debt existed, or at least that it was contemplated that Ferguson might redeem. In 1895 Boyd and Smith took possession of the farm. Ferguson claims that the agreement at that time was that Boyd and Smith should farm the land, and thus pay off the debt. An accounting was demanded by him, through his attorneys, in 1904. Appellees claim that this was the first notice they had after Ferguson left the farm, that their title was in question. Boyd testified that in the latter part of 1895 he proposed to Ferguson that if he would take his horses (then under mortgage to Boyd), get off the farm, and give up the rights and interest he had in it, he (Boyd) would release him from all claims; that Ferguson answered that he would do this; that he (Boyd) told Ferguson to come up right away, and they would cancel the mortgage, and give him all his papers; that Ferguson never called for the papers, although they were afterwards kept, subject to his call, in an envelope marked "Horton Ferguson papers;" that Ferguson took the horses and left the farm, and witness never saw him afterwards until he appeared in court; that within one week after said conversation the tenant upon the farm attorned to witness and Smith, and that they have ever since, by themselves or tenants, been in possession. During their possession they expended considerable sums in improvements, particularly in the erection of a large barn. It is claimed, however, by a witness who appears to have represented Ferguson in some capacity, that he caused Boyd and Smith to be notified that if they built the barn it must be at their own expense, and said witness

claimed that Boyd answered that they would build the barn anyway, as they could make money a good deal faster if they had a place for their stock in winter. This conversation is denied. There is much dispute as to the value of the property, but there is testimony tending to show that at that time the debt equaled the value of the farm. Ferguson was, and since has been, a dissipated man. He spent but little time in Indiana after he left the farm, and he admits that he did not seek an accounting until 1904. He claimed, however, that he had the witness, before referred to, employed to see if he could find a buyer for the farm, but he (Ferguson) did not appear to know what his agent had done in his behalf. The farm has greatly increased in value.

The leading contentions of counsel for appellant are built upon the theory that the original transaction was a mortgage, that the execution of a mortgage does not divest the mortgagor of the legal title, and that, therefore, all evidence of a parol release of the mortgagor's interest was incompetent, as in contravention of the statute of frauds. It may at once be conceded that the original transaction was, in equity, a mortgage, but from this concession it by no means follows that appellees could not show a subsequent parol agreement based upon a sufficient consideration by which appellant had voluntarily released his interest, or that they could not show other facts which would render it inequitable to permit appellant to redeem.

The deed to Boyd was absolute, and the collateral instrument contained no provision making it void upon the performance of a condition. On the contrary, the provision of the latter instrument was that upon repayment the grantee would reconvey. This did not constitute a technical defeasance, although it was, no doubt, sufficient to secure to the grantor an equitable right of redemption. Blackstone says: "A defeasance is a collateral deed,

made at the same time with a feoffment or other conveyance, containing certain conditions, upon the performance of which the estate then created may be defeated or totally undone.'' 1 Cooley's Blackstone (Andrew's ed.), *327. And see, also, 3 Comyns' Digest, *374, title, Defeasance; note to *Fowell* v. *Forrest* (1671), 2 Saund. 47 *dd*. There is little, if any, dissent from the proposition that in such a

4. case as this the grantee has a legal estate. *Watkins* v. *Gregory* (1841), 6 Blackf. 113; *Flagg* v. *Mann* (1837), 2 Sumn. 486, 496, Fed. Cas. No. 4,847; *Baird* v. *Kirtland* (1837), 8 Ohio *21; *Loring* v. *Melendy* (1842), 11 Ohio 355; *Kemper* v. *Campbell* (1886), 44 Ohio St. 210, 6 N. E. 566; *Knowles* v. *Knowles* (1903), 25 R. I. 464, 56 Atl. 775; *McCarthy* v. *McCarthy* (1869), 36 Conn. 177; *Williams* v. *Baker* (1902), 62 N. J. Eq. 563, 51 Atl. 201; *West* v. *Reed* (1870), 55 Ill. 242; *Fitch* v. *Miller* (1902), 200 Ill. 170, 65 N. E. 650; *Gallagher* v. *Giddings* (1891), 33 Neb. 222, 49 N. W. 1126; *Stall* v. *Jones* (1896), 47 Neb. 706, 66 N. W. 653; *First Nat. Bank, etc.*, v. *Tighe* (1896), 49 Neb. 299, 68 N. W. 490; *Hughes* v. *Davis* (1870), 40 Cal. 117; *Marshall* v. *Williams* (1891), 21 Ore. 268, 28 Pac. 137; 1 Sharswood's Blackstone, 646, note. And see *Wilson* v. *Carpenter* (1878), 62 Ind. 495. This is well illustrated by *Watkins* v. *Gregory, supra.* In that case the plaintiff sued to recover on a bond conditioned that if, as soon as

5. the plaintiff paid four certain notes, two, at least, of which, it appears from the bond, he was owing to the defendant, the latter should convey to plaintiff a certain lot. The declaration alleged that the plaintiff had paid the notes before maturity, and that after the time fixed for their payment he demanded of the defendant a deed for the lot, which was refused. The second plea of the defendant alleged that plaintiff had executed to him a conveyance for the lot which was absolute on its face, but it was intended as a security for the payment of said notes; that the bond sued on was executed at the time of the transfer of the deed, was a part

of the same transaction, and was a defeasance to the conveyance, and "that before the notes became due the plaintiff paid the notes, and the estate was thereby revested in the plaintiff." In disposing of this plea Blackford, J., said: "The demurrer to the second plea should have been sustained. It is true, that the conveyance and bond, as stated in the plea, amount to a mortgage. 1 Powell, Mortgages (Am. ed. by Rand), *4; Peterson v. Clark [1818], 15 Johns. *205. But yet as the defendant had expressly covenanted to reconvey the land to plaintiff on the due payment of the mortgage debt, he was bound, when the payment was so made, to execute the conveyance on demand, and his refusal to do so was a breach of the condition of the bond. It was not the agreement of the parties, that the conveyance should be void if the debt were duly paid, but that if the payment should be so made, the defendant would reconvey the lot. The due payment of the debt, therefore, did not revest the title in the plaintiff; but it gave him a right to demand a reconveyance. 1 Powell, Mortgages (Am. ed. by Rand), *9, note." It is to be observed that even at the time the case just quoted from was decided, as the opinion shows, the court was recognizing that the estate of a mortgagor under an ordinary mortgage, before foreclosure, was an actual estate in the land, and was subject to the ordinary incidents pertaining to such estates.

Going back to the proposition that, under the deed and the collateral instrument before referred to, Boyd had the legal title, attention may next be called to the language of Justice Story in *Flagg* v. *Mann, supra.* He said on page 541: "The present bond does not declare that, if the condition is complied with the conveyance shall be utterly void. On the contrary, it is to remain in full validity, and a reconveyance of the title is to be made, which necessarily supposes that, until the reconveyance, the estate remains at law in the grantees." In *Baird* v. *Kirtland, supra,* a debtor executed

to his creditor an absolute deed, and the latter, at the same time, executed to the former a bond to reconvey upon the payment of a sum due. The question was whether the grantor had a legal estate in the land that would be subject to the lien of a judgment under the Ohio statute. The court said: "It is insisted in the present case, by the counsel for complainants, that Kirtland held the premises in controversy merely as mortgagee; that the land was conveyed to him merely as security for the payment of debt. No doubt, in a court of equity, this deed was a deed of mortgage; but at law the whole title of the land passed out of Fowler. True, he took back a bond conditioned, not that upon the payment of the sum of money therein specified this deed should be void, but that Kirtland should reconvey. * * * The only legal right remaining in Fowler, was a right of action upon the bond, provided he first paid the $365 and interest. In equity he might, upon such payment, compel a reconveyance; but at law he had no interest in the land; therefore the judgment of the complainants could not operate as a lien upon this land." In *Knowles* v. *Knowles, supra,* the supreme court of Rhode Island said: "It is to be noted that the defeasance, so called, in this case differs from the ordinary form, as it does not provide that the deed is to become null and void upon the payment of the debt, which is what the plaintiff's assume, but, on the contrary, it implies the validity of the deed by the contract to retransfer. We must take the contract as the parties have made it. Under it the plaintiffs were entitled to a reconveyance, upon payment of the indebtedness." In 1 Jones, Mortgages (6th ed.), §244, the author quite unreservedly states that "an absolute deed with a defeasance passes the legal title to the property even in states in which it is held that a mortgage in the usual form does not pass the title."

Of course, all this has nothing to do with the question whether the transaction was in equity a mortgage; but,

since Boyd was at the pains to invest himself with the
6. legal title, it would be altogether anomalous that appellant should be able, owing to a right which had its origin in equity, to interpose the statute of frauds as an obstacle to the barring of the right of redemption, and thereby cut off equitable defenses. The surrender of appellant's interest, which appellees assert, was not within the
7. statute of frauds, because Boyd had the legal title, while appellant had only an equity of redemption (using that term in its proper sense, rather than its inaccurate sense, as now often applied to a mortgagor's interest under an ordinary mortgage). A conveyance or foreclosure was, therefore, not required to be shown to bar him. The question is not one of a passing of his title to his grantee, but of the sufficiency of an equitable defense against a suit in equity. In *Kemper* v. *Campbell, supra,* where a deed absolute in form was intended as a security, the court said: "It is not a proper mortgage. In equity it is construed to be such for the purpose of preventing imposition and injustice; but at law it is simply what, on its face it purports to be, an absolute conveyance in fee simple. *Hughes* v. *Davis* [1870], 40 Cal. 117; 1 Jones, Mortgages (6th ed.), §339. And no other or different construction will be placed on the deed, unless necessary to accomplish the ends of justice. 1 Jones, Mortgages (6th ed.), §321. To do otherwise would be foreign to the spirit of equity, and would violate the plainest principles upon which equity jurisprudence has always been administered by the courts. No one of the maxims of equity is of more unvarying application than that 'he who seeks equity must do equity.'"

In *Fitch* v. *Miller* (1902), 200 Ill. 170, 65 N. E. 650, where an instrument of defeasance was technically insufficient, it was held that the grantor's deed left in him only a right of redemption, and, as the latter was purely an equitable estate, a court of chancery would not protect and enforce it

unless equitable considerations required that this should be done.

Where the legal title is in the mortgagee, so that it becomes necessary for the mortgagor to assert his claim of redemption on the equity side of the court, it does not

8.  admit of doubt that he must submit his claim to the testing of equity principles. His right of redemption may subsequently be lost to him by a fair contract which he has voluntarily entered into for the surrender of such right, or it may be defeated by other facts, which, upon a consideration of the equities of the whole case, render it inequitable to accord to him the privilege he seeks. *Wilson* v. *Carpenter* (1878), 62 Ind. 495; *West* v. *Reed* (1870), 55 Ill. 242; *Carpenter* v. *Carpenter* (1873), 70 Ill. 457; *Fitch* v. *Miller, supra; Luesenhop* v. *Einsfeld* (1904), 87 N. Y. Supp. 268, 93 Hun, App. Div., 68; *Hesser* v. *Brown* (1905), 40 Wash. 688, 82 Pac. 934; *Marshall* v. *Williams* (1891), 21 Ore. 268, 28 Pac. 137; 1 Herman, Mortgages, §124; 1 Jones, Mortgages (6th ed.), §338. In *West* v. *Reed, supra,* it was said: "The naked legal title is vested in the grantee, and if such transactions subsequently occurred between the parties as would render it inequitable that the grantor should be permitted to redeem, a court of equity will, of course, refuse to aid him, as it will always refuse its aid to perpetrate a wrong. It is wholly immaterial whether he has executed a technical release of his equitable interest to the grantee or not. He might have done that, and still be entitled to the aid of a court of equity, which looks to the substance of a transaction and not to its form. And without having done that, he may have had such transactions with his grantee as would render it inequitable to compel the grantee to suffer a redemption. In such an event, the equitable estate is practically gone or annihilated without a release, because the equitable considerations upon which it rested are destroyed by the acts of the parties, and chancery will leave the legal

title where they have placed it." In *Marshall* v. *Williams, supra,* where the mortgagee held, under a deed absolute on its face, and the grantor's heir was seeking to redeem, the court, referring to the position of a plaintiff in such circumstances, said: "Being compelled to ask the interposition of a court of equity in his behalf, he must first have the standard of equity applied to his own conduct. If that condemn him he must go out of court. 'He who comes into a court of equity must come with clean hands,' is a maxim rigidly enforced and sternly applied to the conduct of every person who seeks the aid of a court of conscience. 'One who comes for relief into a court whose proceedings are intended to reach the conscience of the parties,' says Mr. Justice Wells, in *Hassam* v. *Barrett* [1873], 115 Mass. 256, 'must have that standard applied to his own conduct in the transaction out of which his grievance arises. If that condemns himself he cannot insist upon applying it to the other party.' This rule is as applicable to a plaintiff in a suit to declare an absolute deed a mortgage and to be allowed to redeem, as in any other case, and he is under the same obligation to do equity as any other person who seeks redress in a court of equity." Even admitting that the oral agreement or negotiation which Boyd testified to was inchoate, yet it cannot be affirmed that in view of this the right of redemption still subsists. If the court should find, as it would perhaps have been warranted in doing, that, technically speaking, there was no surrender of appellant's equity of redemption by a concluded agreement, yet to dispose of the case on that theory would be to determine the rights of the parties upon a very incomplete view of the evidence.

The question of laches was in the case. Where, pursuant to a fair arrangement for the surrender of his right, the holder of the equity has appropriated to himself that part of the fruits of the agreement which appeared immediately to concern him, has apparently abandoned his right, has been guilty of long and unexplained de-

lay, during which there has been a sharp increase in the value of the property, and meanwhile the holder of the legal title, acting upon the supposed agreement as having been practically consummated, has entered into the possession as owner and made improvements, a court of equity, which looks with disfavor upon stale claims, and particularly upon speculative claims, is not bound to afford the plaintiff a *locus poenitentiae*. *Ryason* v. *Dunten* (1905), 164 Ind. 85; *Valentine* v. *Wysor* (1890), 123 Ind. 47, 7 L. R. A. 788; *Carpenter* v. *Carpenter, supra; Walker* v. *Warner* (1899), 179 Ill. 16, 53 N. E. 594, 70 Am. St. 85; *Marshall* v. *Williams, supra;* 18 Am. and Eng. Ency. Law (2d ed.), 102. There was clearly room for the inference in this case that appellant acted upon the theory that his conversation with Boyd represented a concluded agreement, and that in consideration of his right to take the horses he voluntarily relinquished his interest in the land. If this be true, and no advantage was taken of him, we know of no reason for the interference of a court of equity, and it may be added that upon this assumption the claim appears to be speculative and the creature of an afterthought. If Boyd is to be believed as to the occurrence of the conversation he testified to, appellant has not only been guilty of the inequity of taking away the horses on which appellees had a mortgage, but his long delay—on that theory of the case wholly unexplained—left appellees with all the chance of loss, if the property during the course of years depreciated, with no chance of gain should it rise in value, a thing in itself inequitable (*Hoyt* v. *Latham* [1892], 143 U. S. 553, 36 L. Ed. 259, 12 Sup. Ct. 568), and such delay subjected them to all of the chance of being worsted on an accounting owing to the loss of evidence that might have been at their command had an accounting been earlier sought.

When all of this is considered, and over against it is set the fact that, under the evidence of values introduced by appellees, appellant really lost nothing, the court was abund-

antly justified in concluding that there were such elements of prejudice growing out of appellant's long delay as to justify the refusal of all relief.

Appellant's counsel complain of the action of the court in admitting the testimony of Boyd as to what was said at the time of the original negotiation, and as to his belief 12. that the deed was absolute. The ground urged for the objection is that the deed and the collateral instrument, when read together, show that the transaction was a mortgage. We agree with counsel for appellant that the testimony as to the understanding of the parties could not, in the circumstances, affect the character of the transaction, but it does not follow that the testimony was not competent on the question of the right of appellees, in the accounting sought, to be reimbursed for improvements. There was evidence in the case of improvements that appellees could not have been allowed for had they occupied the situation of an ordinary mortgagee in possession. The matter of these improvements was necessarily in the case in taking the accounting. The question of the order of the proof was for appellees. *Nordyke* v. *Shearon* (1859), 12 Ind. 346. In any event the good faith of appellees was a large question, in arriving at the equities of the case, under the theory of laches. What was said by appellant or his representative at the time of the original transaction was calculated to induce belief that the sale was conditional, and, therefore, went to the belief of Boyd. Besides, both he and Smith had before that time been placed on the stand as witnesses for appellant, and subjected to a sifting examination, the evident design of which was to show that they had never regarded the sale as conditional. It is clear that there was no error in admitting the testimony of Boyd.

Complaint is further made that appellees were permitted to show by Smith that at the time of his purchase Boyd in-

formed him that appellant's agent had represented to him, in the original negotiation, that the contract would not have any effect other than to permit Ferguson to purchase the farm.   The objection appellant offered to this testimony upon the trial was that it called for a conversation between two defendants in the absence of the plaintiff, and that it tended to dispute written instruments which on their face constituted a mortgage.   Immediately after the making of the answer complained of, Smith testified that he believed, upon said representation, that the deed was absolute.   In the light of the situation indicated, we take up the question of whether there was error in admitting the testimony referred to.

Smith was an equal contributor to the purchase and to the making of the improvements, and although his arrangement with Boyd was by parol, yet appellant could not raise the question of the statute of frauds as between Boyd and Smith. · *Morrison* v. *Collier* (1881), 79 Ind. 417; *Cool* v. *Peters Box, etc., Co.* (1882), 87 Ind. 531; *Jackson* v. *Stanfield* (1894), 137 Ind. 592, 620, 23 L. R. A. 588; 29 Am. and Eng. Ency. Law (2d ed.), 807, and cases there cited.   There can be no doubt that it was material to know Smith's belief as to the nature of his title, and, this being true, it was a substantive fact of importance to show that his belief was founded on what he understood to be a representation of the opposite party to the contract as to its legal effect.   The testimony was clearly not hearsay.   If we had before us a case where the purpose of proving the declaration was to show that what was stated was true, then it would be necessary either to associate it with some act, the quality of which was under inquiry, or to bring it within some one of the recognized exceptions to the rule excluding hearsay.   The competency of the testimony cannot be claimed on either of these grounds, but, where it is material to prove as a fact that the declaration was made, regardless of whether

it was true or false, testimony of the fact does not involve the introduction of hearsay. So where the question is whether a person acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence. *Taylor* v. *Willans* (1831), 2 Barn. & Ad. 845; *Hurlburt* v. *Hurlburt's Estate* (1890), 63 Vt. 667, 22 Atl. 850; *Lewis* v. *Manly* (1797), 2 Yeates 200; 1 Wharton, Evidence (3d ed.), §35; 1 Greenleaf, Evidence (Lewis's ed.), §101; 3 Wigmore, Evidence, §1789; Phipson, Evidence (2d ed.), 200. Before parties were competent to testify in their own behalf it was only possible to prove their belief circumstantially, and, since what conduces to the proof of a relevant hypothesis—the general test of competency—is not changed by statutes removing the disqualification of interest, it is clear that such evidence is still competent. The evidence in question is to be regarded as more than suppletory. It is direct evidence of an ultimate fact. "Express communication is always a proper mode of evidencing knowledge or belief." 1 Wigmore, Evidence, §261. A careful writer on the law of evidence states that "a party's good faith in doing an act may generally be inferred from any facts which would justify its doing." Phipson, Evidence (2d ed.), 126. It is true that the information which Smith received was given more than four years before he took possession of the land, but as it was calculated to create a fixed belief in his mind, in the absence of any information to the contrary, the court cannot say that the remoteness of the declaration is anything more than a circumstance going to the weight of the evidence. See *Goodwin* v. *State* (1884), 96 Ind. 550. The proposition is well illustrated by *Attorney-General* v. *Bradlaugh* (1884), 1 C. & E. 440, a case which involved an inquiry as to the defendant's belief in a Supreme Being at the time of taking an oath as a member of the house of commons. In summing up Lord Coleridge said: "Of course there is plenty of time, as I said in the course of the

argument, for a man in four years to have changed his opinions, indeed many men have changed their opinions in much less time on very many questions, but it must be a question of sense, and what you look at upon the whole of the evidence. You must not take it as proved conclusively no doubt, that because a man held a particular view in May and June, 1880, that therefore he held that particular view on the 11th of February, 1884. That is true, but on the other hand, that he held that opinion in June, 1880, is some evidence that he continued to hold it in February, 1884, although no doubt the weight of the evidence is for you." Following this thought, a writer, from whose text we have already quoted, says: "State of persons, mind, or things, at a given time, may in some cases be proved by showing their previous existence in the same state; there being a probability that certain conditions and relationships continue. This probability, however, will weaken with remoteness of time, and only continues till the contrary is shown, or a different presumption arises from the nature of the case." Phipson, Evidence (2d ed.), 96. The assault by appellant's counsel upon Smith's good faith, during his previous examination, justified an inquiry as to his belief before the making of the improvements, and, besides, since, as before indicated, he had a right to show with reference to his belief the basis that he had for it, he was entitled to go into his belief at that time, and then to prove directly that he believed upon the representation that the deed was absolute.

Judgment affirmed.

## ON PETITION FOR REHEARING.

PER CURIAM.—We deem it proper to give expression to our views on one point, because it was not directly passed on in the decision of the case. Complaint is made that under the finding and judgment title is quieted in Boyd and Smith, although their cross-complaint

alleged a fee simple title in both. Even if Smith had but an equitable title, there should not be a reversal. The general finding and decree against appellant, when viewed in the light of the evidence, presumptively leaves him shorn of all interest in the land, and as the court below had authority at any time to strike out the name of any party to conform the pleadings to the proof (§405 Burns 1908, §396 R. S. 1881), and as we are commanded to disregard defects in form and imperfections which might have been amended in the court below, we hold that appellant cannot complain that the court quieted title in both Boyd and Smith, instead of striking out the name of Smith as a plaintiff, and quieting title as to Boyd.

We may further say, in conclusion, that we are not authorized to disturb the finding upon the evidence. *Hudelson* v. *Hudelson* (1905), 164 Ind. 694, and cases cited.

20. As to the transaction antedating the alleged release, we cannot say, in view of the evidence and the presumption of validity which attends the execution of formal evidences of indebtedness, for years unquestioned, fortified by the conclusion of the trial court, that the settlements were wrong, much less that there was an intention to defraud, or that appellant was in fact misled to his prejudice when he agreed to surrender. Upon a reconsideration of the evidence we have to say, that, at least, if it be given the 21. strongest construction in favor of appellees which the lower court was legally justified in adopting, there would be more of inequity than equity in a decree in appellant's favor. This alone is enough to uphold the result. *Howard* v. *Babcock* (1836), 7 Ohio 405; *Hill* v. *Nisbet* (1885), 100 Ind. 341; *Ryason* v. *Dunten* (1905), 164 Ind. 85; *Boswell* v. *Coaks* (1884), 27 Ch. Div. 424, 456.

Petition for a rehearing overruled. All concur, except Hadley, J., not voting.