THERESE LUESENHOP, Appellant, *v.* BARBARA EINSFELD, Individually and as Executrix, etc., of JOHN P. EINSFELD, Deceased; MARIA FRANKENSTEIN and Others, Respondents.

*Deed absolute in form executed as security for a debt — agreement by the grantee to reconvey the land within one year on repayment of the debt — execution by the grantor to the grantee of a general release — the grantor cannot subsequently maintain an action to redeem the premises — such a conveyance is not invariably a mortgage — the parties may agree that if the debt is not repaid within the specified time the grantee's title shall become absolute.*

November 25, 1873, Theresa Luesenhop conveyed certain real estate to John P. Einsfeld. The conveyance, although absolute on its face, was given as security for an indebtedness of $1,000, and concurrently with its execution Einsfeld and his wife executed an agreement by which they agreed to reconvey the property one year from the date of the agreement or sooner, provided the said Luesenhop paid the indebtedness. The agreement further provided that

Luesenhop should have the occupancy of the premises during the term, and that she should pay the taxes and insurance and make all necessary repairs to the buildings on the premises.

In November, 1874, Einsfeld without, so far as appeared, making any special agreement with Luesenhop, entered into possession of the premises. He continued in such possession, claiming to own the property, paid off the incumbrances which were liens against the property amounting to upwards of $3,000, paid all the expense of repairs and maintenance, and generally exercised all the rights and discharged all the obligations of an owner.

In 1886 negotiations were had between Einsfeld and Luesenhop, which resulted in the payment to her by Einsfeld of the sum of $1,500, and the execution by her to Einsfeld of a release by which she discharged the said Einsfeld from all claims "in law or in equity," and from all "manner of * * * claims * * * upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents."

At the time of the execution of the release, Einsfeld claimed to be the absolute owner of the property, and the only matters in dispute between the parties were the claims growing out of the conveyance of the property.

Thereafter Einsfeld made valuable improvements upon the premises and paid the taxes and insurance. He continued in possession until his death in 1891. In 1893 Luesenhop brought an action against Einsfeld's executor and devisees to compel an accounting with respect to the premises and a reconveyance of the premises upon payment of the sum found due.

*Held,* that the plaintiff was not entitled to the relief sought;

That there was an entire lack of equity in the plaintiff's case;

That the release executed by the plaintiff to Einsfeld operated to extinguish whatever rights the plaintiff had in the premises;

That the fact that Einsfeld and his successors had upon the faith of the release incurred expense in maintaining and improving the premises, and could not be placed in the situation in which they were before the release was executed, was fatal to the plaintiff's right to demand a reconveyance.

*Semble,* that every agreement to reconvey upon the payment of a certain sum within a specified time does not constitute a mortgage, and that the parties may execute such conveyance with the intention that the title shall become absolute, and the right of redemption determine, upon default after the expiration of the time for payment, and that if such intention actually appears full effect will be given to it; that in the absence of such intention appearing, equity would construe the transaction as a mortgage with the right to redeem.

HISCOCK, J., dissented.

APPEAL by the plaintiff, Therese Luesenhop, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 2d day of July, 1902, upon the decision of the court, rendered after a trial at the Erie Special Term, dismissing the plaintiff's complaint upon the merits.

The defendant Barbara Einsfeld died during the pendency of the action, but no substitution has been made in her place.

The facts stated in the head note will in part be found in the dissenting opinion of HISCOCK, J.

*Eugene Van Voorhis* and *John Van Voorhis & Sons*, for the appellant.

*Charles Diebold, Jr.*, and *Fisher, Coatsworth & Wende*, for the respondents.

STOVER, J. :

The complaint alleges that on the 25th day of November, 1873, plaintiff made and delivered to the defendant Einsfeld's testator, John P. Einsfeld, a conveyance of certain real estate in the city of Buffalo, said conveyance being absolute upon its face; that such conveyance was made for the purpose of securing the payment of the sum of $1,000 due from plaintiff to Einsfeld; that said Einsfeld thereafter entered into possession of said property, and continued in possession until the time of his death; and it demanded an accounting of the rents and profits of the property, and an adjudication that the plaintiff be entitled to a reconveyance of the property upon the payment of the sum found due. The conveyance was executed on the date above stated, and on the same date an agreement was entered into between John P. Einsfeld, Barbara, his wife, and the plaintiff herein, which agreement recited the indebtedness and the conveyance, and contained a stipulation on the part of John and Barbara Einsfeld that they would reconvey the property one year from the date of the agreement, or sooner, provided the plaintiff paid and discharged the debt; and further providing that the plaintiff herein should have the occupancy of the premises during the term, she agreeing to pay the taxes and insurance premiums, and make all necessary repairs, etc., to the buildings.

Einsfeld entered into possession of the property in November, 1874. The plaintiff testified that she received the rents from the property for four months after the execution of the conveyance to Einsfeld. Einsfeld continued in possession of the property, claiming to own it, paid off the incumbrances which were liens against the property at the time of the taking of the conveyance, which amounted to upwards of $3,000, paid all the expense of repairs and

maintenance, and generally exercised all the rights and discharged all the obligations of an owner.

The evidence does not show any special agreement made between the parties at the time Einsfeld entered into possession of the property, Einsfeld at the time of the trial being dead, and the plaintiff being disqualified as a witness in regard to the personal transactions. The testimony for the plaintiff rests, so far as oral proof is concerned, almost entirely upon the evidence of the plaintiff's daughter, who details conversations and transactions had with Einsfeld, but there is no explanation of the possession by Einsfeld upon the expiration of the year after the conveyance of 1873. It does not appear that any further transactions took place between the parties until the year 1886. It is alleged that at that time the plaintiff, with her daughter, called upon Einsfeld and requested a settlement of the claims.

The evidence fairly shows, we think, that at the time of this meeting Einsfeld claimed to be the absolute owner of the property, and that some discussion was had with reference to the claims; giving the discussion the most favorable view for the plaintiff, it must be fairly said that Einsfeld claimed to be the owner of the property, and that the settlement, which is hereafter referred to, was made with that understanding.

The result of the negotiations was a release executed by the plaintiff, by which she released and discharged the said Einsfeld from all claims "in law or in equity," and from all "manner of * * * claims * * * upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents."

It is undisputed that at the time of the execution of this release this real property and the claims growing out of the conveyance thereof were the only matters in dispute between the parties. At the time of the settlement the plaintiff was acting under the direction of an attorney who appeared for her, and was present at the interview between her and Einsfeld, and who drew the release referred to. His testimony is to the effect that the interview was arranged for the purpose of adjusting the differences growing out of the conveyance. At the time of the execution of the release the consideration of $1,500 was paid by Einsfeld to the plaintiff.

· The trial judge has found that the release was executed with the intention that Einsfeld should thereby acquire all the right, title and interest of the plaintiff in the premises in question. He further found that after said accounting and settlement Einsfeld and his successors in interest made valuable improvements upon the premises, and paid taxes and insurance for said premises. He also found that the rental value of the premises in 1873 was forty-five dollars and eighty-three cents per month.

The plaintiff's case rests upon the proposition that the conveyance by the plaintiff, and the execution of the agreement to reconvey, constituted a mortgage, and that Einsfeld acquired no legal title to the property by reason of the subsequent transactions. This view ignores other, and, we think, controlling features of the transaction. In the adjudging of these transactions, as in others of like character, the primal and controlling consideration is the intention of the parties. If it can be gathered from the agreement that the parties intended to transfer a title, intended that the title should vest in Einsfeld, and treated the property after the transaction as though the title had vested in Einsfeld, no valid reason is given why this intention should be defeated. The claim that the written papers did not sufficiently convey a legal record title is not of itself sufficient to defeat the intention, for the contract having been performed, a fair consideration paid, with the intention that the title should vest in Einsfeld, the court would, under well-known principles, either of estoppel or enforcement of executed agreements, adjudicate the legal title to be where it properly belonged. The plaintiff, for nearly twelve years after Einsfeld entered into possession of the property as owner, made no claim whatever, so far as the record shows, for a reconveyance of the property. Then, for some reason, a claim is made, and upon negotiations entered into, and full legal advice, the release was executed, with the intention above stated. No further steps were taken by the plaintiff to enforce any actual or supposed right in the premises until after the death of Einsfeld, and then, after a silence of seven years, and two years after the death of Einsfeld, this action is commenced. Still retaining the consideration, she asks to repudiate the contaact already entered into by her.

It would seem to be enough to say that there was an entire lack

of equity in the plaintiff's case; but reliance is had upon the case of *Odell* v. *Montross* (68 N. Y. 499), and it is sought to place this case within the principle there announced. We take it that the governing principle applied in that case is stated at page 504 of the report, to be this: "A mortgagor and mortgagee may, at any time after the creation of the mortgage and before foreclosure, make any agreement concerning the estate they please, and the mortgagee may become the purchaser of the right of redemption. A transaction of that kind is, however, regarded with jealousy by courts of equity, and will be avoided for fraud, actual or constructive, or for any unconscionable advantage taken by the mortgagee in obtaining it. It will be sustained only when *bona fide;* that is, when in all respects fair, and for an adequate consideration."

In the case of *Odell* v. *Montross* it appears that the consideration for the release was fifty dollars, practically nominal, and that the paper under which the right of redemption was claimed to be extinguished was, in its terms, ambiguous; and a discussion is there had as to the strictly legal effect of such documents; and were the facts the same in the case under discussion and the legal effect of the paper only applied, perhaps the contention of the plaintiff might be upheld. But, as above stated, it ignores the rule laid down above, namely, that such agreements may be made and will be upheld in equity, if fair and *bona fide.* In the case of *Odell* v. *Montross,* in the application of the legal principle, it was held that the agreement there could not be upheld, and that the facts in that case did not bring it within the equitable principle. In the discussion of that case it was said: "Had the defendant, acting upon the faith of this transaction, entered into possession of the premises and incurred expenses, and substantially changed his situation so that he could not be placed in the same situation in which he was before, it might have estopped the plaintiff from taking shelter under the Statute of Frauds, or alleging the insufficiency of the written instrument to carry out the agreement and intent of the parties. But there are none of the elements of an equitable estoppel in the case as presented by the record." So that, in that case, the absence of the equitable principles led the court to apply the rule against the grantee, and it may be said further, while perhaps not as controlling, but as a fair consideration of the case under discussion, that not every agreement to

reconvey upon the payment of a certain sum within a specified time, constitutes a mortgage, but the parties may execute such conveyance with the intention that the title shall become absolute, and the right of redemption determine, so as to vest in the grantee the title absolute, upon default after the expiration of the time for payment, and such intention actually appearing, there is no reason why full effect should not be given to it. While it is true as a general rule that, in the absence of such intention appearing, equity would construe the transaction as a mortgage with the right to redeem, yet such rule is not to be applied where another intention is evident. If it had been intended to rely upon the conveyance as a mortgage, why did Einsfeld's wife join in the agreement to reconvey? It could be fairly said that it was contemplated that a reconveyance was necessary to divest Einsfeld of the title. So, coming to the question of the release, we know of no rule which would render invalid the agreement to regard the deed as absolute upon the payment of the consideration for the release, or that would defeat an agreement to construe the release as extinguishing the right to redeem, and vesting the absolute title in the grantee. The release is broad enough to embrace a release of the equity of redemption. Such an agreement would violate no principle of law and no rule of public policy, and, therefore, it was quite within the power of the parties to bind themselves by such an agreement, and such interpretation, we think, should be given to the release here. It is an agreement made fairly, in good faith and upon a valid and adequate consideration, which has been fully paid and discharged.

The evidence, we think, discloses that at all times after the conveyance Einsfeld insisted that he was the absolute owner of the premises. The plaintiff, at the interview in 1886, claimed the right to redeem. Here was a disputed situation between the parties, and Einsfeld might fairly, without surrendering his position as an absolute owner, have paid the $1,500 consideration in order to avoid the dispute. Certainly the payment of the $1,500, and asking for the release from all claims, could not be deemed an acquiescence under the claim of the plaintiff that she was the owner of the equity of redemption, but it should be treated as a settlement of disputed matters, leaving Einsfeld in full control and ownership of the prem-

ises and the plaintiff with the consideration for the settlement and acknowledgment of Einsfeld's rights as owner.

Another feature which we think takes this case out of the principle of *Odell* v. *Montross* is that Einsfeld and his successors have, upon the faith of the transaction, continued in the possession of the premises, incurred expense and substantially changed their situation, so they could not be placed in the same situation they were before the agreement was made.

It is hardly necessary to discuss in detail this feature of the case. There is no dispute as to the facts. All taxes, assessments for improvements and the expense of the maintenance of the property were borne by Einsfeld during his lifetime, and by his executor after his death, up to the commencement of the action. It would seem impossible to restore Einsfeld or his successors to the position which he occupied prior to the making of the agreement in question. This feature of itself, it would seem, takes the case out of the principle of *Odell* v. *Montross* if it were necessary to reconcile this case with the adjudication there. The case of *Odell* v. *Montross* is a case which perhaps may be considered a border case. Some discussion was there had as to the legal effect of conveyances, and the principle was applied as rigidly perhaps as in any adjudicated case, but it did not attempt to relax or ignore the basic principle that full effect is to be given to the intention of the parties to an agreement which violates no principle of law and is not against a rule of public policy, but, upon the contrary, the principle is reiterated that all agreements of that kind, when once established, will be upheld. And in that particular case it was held that the grantee showed no equitable rights which would suffer by reason of the enforcement of the legal rule, and, therefore, it was applied in that case, the statement there being that no injustice would be done to the defendant by the conclusion reached; but in the case under discussion it is impossible to see how a gross injustice would not be done to the successors of Einsfeld were the plaintiff permitted to recover in this action. It perhaps is more profitable to apply the generally accepted rules of law and equity in the consideration of this case than to endeavor to square it with a dissimilar case which is quoted as a precedent. Precedent, if without principle to sustain it, cannot be regarded as authority, and, as we have seen, the case

cited varies in such essential particulars from the one under consideration that it is not of a nature to be controlling.

The judgment should be affirmed, with costs.

All concurred, except HISCOCK, J., who dissented in an opinion.

HISCOCK, J. (dissenting):

This action was brought by plaintiff to effect a redemption of certain real estate situated in the city of Buffalo formerly conveyed to her by one John P. Einsfeld, and to procure an accounting between plaintiff and said Einsfeld and the present defendants of moneys paid out or received on account of the plaintiff. The principal basis of the decision made by the learned trial justice denying plaintiff's prayer for relief, was in effect that she had a settlement with said Einsfeld whereby and in pursuance whereof she had released all claims against him, including any rights in said real estate or to redeem the same. I think that error was committed in this determination which calls for reversal of the judgment.

The undisputed evidence and findings of fact made upon the trial established, amongst others, the following facts:

In 1873 plaintiff procured a sum of money from Einsfeld and executed to him a deed absolute in form of the premises in question. Simultaneously, however, an instrument of defeasance was executed back giving the right to redeem within a limited time. This transaction concededly amounted to a mortgage by plaintiff of her property. A short time subsequently Einsfeld entered into possession of the mortgaged property, thereafter receiving and enjoying the rents and profits and making certain payments for taxes, interest, etc. Plaintiff moved away from the city of Buffalo to Cincinnati. While living in the latter place she sent her husband to Buffalo to get an adjustment of matters with Einsfeld, and he did obtain from the latter $150 of which he made no account to his wife. In 1885 or 1886, after the death of her husband, plaintiff found in an unknown drawer the papers constituting the original transaction between her and Einsfeld and soon thereafter came to Buffalo to secure a settlement with Einsfeld and a reconveyance and possession of her real estate, and after various negotiations and an examination of Einsfeld's accounts with plaintiff and the property, an adjustment was arrived at between the parties whereby Einsfeld paid to plaintiff

the sum of $1,500, and she executed to him a general release which was in the ordinary form of all claims and demands whatsoever in law or in equity, but contained no specific reference whatever to said real estate or her right, title and equity of redemption therein. Although requested, plaintiff refused to execute any deed or conveyance of her property. Einsfeld continued in possession of the property until in 1891 when he died leaving a last will and testament by which the parties now named as defendants succeeded to his interest in said real estate. During the time which elapsed between said settlement and Einsfeld's death he paid out various sums on account of said property by way of taxes and assessments for paving and sewer improvements, but spent no considerable sums in altering or repairing the buildings upon the property. The findings made by the learned trial justice that he and his successors made valuable and permanent improvements upon the premises must be held to largely relate to and cover the payment of taxes and assessments levied upon the premises for the undisputed evidence shows that outside of said expenditures no substantial sums were spent.

At the time of the settlement aforesaid, upon plaintiff's demand for a reconveyance of her property Einsfeld represented that he had conveyed away the same and also that he had failed or become financially irresponsible. Although these representations were not true plaintiff believed the same as expressly found by the trial court and did not discover their falsity until after Einsfeld's death. In 1893 this action was commenced.

It follows from the foregoing facts that plaintiff's original conveyance to Einsfeld was a mortgage and that she is entitled to have an accounting with, and redemption of her property from the defendants as successors of Einsfeld, unless the same has in some manner been cut off or lost. It is urged in behalf of respondents that this result was accomplished by the settlement and release executed in 1886 and already referred to, but I am not able to accept or agree with that view.

Although the mortgage which plaintiff executed and which was put upon record was in form an absolute deed, she still retained title in fee to the premises covered thereby subject only to the conveyance as a mortgage and upon payment of her indebtedness would

have been entitled to compel the execution of a reconveyance or of such other instrument as would perfect her record title. A mere release general in form such as plaintiff executed to Einsfeld was not sufficient to convey to him her title to said premises and to cut off her equity of redemption therein. She could only be divested of it (except by way of estoppel) by some instrument which would be valid under the Statute of Frauds and in compliance with the statute prescribing the mode and manner of conveying lands. Her right of redemption was not in any sense a "claim or demand" which would be cut off by the general release. (*Odell* v. *Montross,* 68 N. Y. 499.)

Therefore, if the transaction between the parties has operated to cut off plaintiff's right in said premises it must be upon some other theory than that just discussed, of a conveyance of transfer.

Upon the trial an amendment of defendant's answer was asked and permitted allowing them to pray for such a reformation of the release executed as would turn it into a conveyance by plaintiff of her interest in said premises, it being claimed that it was the intention of the parties that she should execute such a conveyance. It is apparent from the findings made by the trial justice and it is conceded in the brief of the learned counsel for the respondents that no such reformation of the release was adjudged and plaintiff's complaint, therefore, was not dismissed upon that ground.

It is, however, urged within the suggestions made in the case of *Odell* v. *Montross,* already quoted, that after the settlement and execution of the release in question Einsfeld and these defendants as his successors expended such sums in the improvement of the premises as to have created an estoppel against plaintiff's enforcement of her claim to the lands; also that owing to the death of Einsfeld it will now be difficult for defendants to make an accounting of his receipts and disbursements on account of plaintiff and said premises; also that there has been *laches* in the commencement of this action.

The last two suggestions may be disposed of first. I think there was no unpardonable *laches* in the commencement of the action. As already stated, plaintiff did not discover the falsity of Einsfeld's representations that he had sold and conveyed away the property until his death sometime in 1891, and this action was

commenced in 1893. I am not aware of any authority which under the circumstances of this case would defeat plaintiff's right to recover because, owing to the death of an adverse party in interest, it will be more difficult to make proofs in opposition to her claim. Neither am I able to discover that there will be any more difficulty for defendants than for plaintiff in establishing the account. Interest, taxes and insurance are undoubtedly the main items of payment, and these will so be a matter of record in the accounts of third parties that they may be easily proved. The payment of any small sum for repairs made and paid for by Einsfeld may apparently be established with ease by the testimony of witnesses, sworn upon the trial of this case, who had knowledge in regard thereto.

I pass, therefore, to the question of estoppel chiefly urged, that Einsfeld and the defendants had expended large sums upon the property by way of improvements. In the first place, in opposition to defendants' invocation of the defense of estoppel against plaintiff upon principles of equity, it may be recalled that plaintiff was led into making the settlement and executing the release relied upon by the false representations of defendants' predecessor in interest that he had parted with her real estate, and, therefore, could not reconvey it. It would be a somewhat strange and anomalous application of the principles of equity to allow defendants to build up the defense of estoppel against plaintiff upon acts which it is fair to state she was induced to perform by the fraud and misrepresentations of the predecessor through whom defendants claim.

Passing by this consideration, however, I am unable to perceive facts in this case which would constitute the defense of estoppel within the rule suggested in the *Odell* case. Einsfeld did not go into possession of the property upon the faith or strength of the settlement made with plaintiff. He was already there. He simply continued in possession, and continued to do precisely as he had been doing, and as he would have done if no settlement had been attempted. It has already been pointed out that the evidence shows conclusively that he expended no considerable sums for repairs or alterations of the property ; that his main expenditures were in the payment of taxes, interest and insurance, such as any mortgagee in possession would be apt to pay. As against these payments he and the defendants have had the possession of the property and the ben-

efit of the rental value thereof. If upon a proper accounting it shall be found that the disbursements, including the amount paid plaintiff in 1886, exceed the amounts received, defendants can be amply and entirely protected by the striking and payment of such balance as the ordinary and necessary condition of plaintiff's redemption of her property. It seems to me that there is nothing in respondents' situation with reference to the property now or during the occupancy of it by them and their predecessor which cannot be perfectly considered and taken care of upon an accounting such as usually accompanies a redemption of real estate from a mortgagee in possession; that there is nothing which prevents them from being restored to the position which was occupied by Einsfeld at and before the date of the settlement made between him and plaintiff, and that, therefore, there is not found in any alleged defense of equitable estoppel a reason for denying to plaintiff the relief which she seeks.

In accordance with these views I think the judgment appealed from should be reversed and a new trial granted, with costs to appellant.

Judgment affirmed, with costs.