GEO. L. PEASLEE v. MARY M. FLETCHER'S ESTATE.

*Will.*

Except in residuary clauses, general words in a will following words of a limited
   signification and coupled with them, are restricted to the same class of things
   as the former; thus, the testatrix gave by will to her uncle her " home place
   on Prospect street, in said Burlington, with my household furniture, and all
   my personal goods and chattels on said premises at the time of my decease,"
   and the greater part of the residue of her estate to a hospital; *Held*, that the
   words "goods and chattels" did not include promissory notes and cash which
   were in the house or " home place" of the testatrix at the time of her death.

APPEAL from the decree of the Probate Court for the Dis-
trict of Chittenden.   Heard by the Court, Chittenden County,
September Term, 1886, TAFT, J., presiding.   Judgment that
the plaintiff was not entitled to the Manwell notes and
cash on hand in the house or " home place " of the testatrix at
the time of her decease.   Mary M. Fletcher died, leaving a
will, the clause of which in contention is set out in the opinion.

It appeared that the testatrix at the time of her death was
possessed of a personal estate consisting mainly of United
States bonds to the amount of about $175,000 ; that she had
some years previously given to the Mary Fletcher Hospital
$150,000 ; that she kept most of her money and government
securities in different banks, retaining with her at her house
on Prospect street, from $500 to $1000 ; that sometimes when
she received treasury certificates from Washington in payment
of interest on registered bonds she kept them for a short

Peaslee *v.* Fletcher's Estate.

period at her house, and at the time of her removal to the hospital, as hereafter stated, she had in her house from $1500 to $2000 of these certificates; that she also had there seven promissory notes executed by one Manwell for $1000 each, and also $1100.18 in cash.

It was also the custom of the testatrix, to keep her promissory notes and that class of securities in her house; and·at the time of the execution of her will, which was made when she was ill and expected soon to die, there was in the house besides the notes in dispute, other promissory notes amounting to about $80,000, which were subsequently given to the hospital as part of the gift above named.

She was also in the habit of having certain United States bonds, which she owned after the making of her will, brought to the house from time to time where they would remain during the day that she might cut off the coupons.

She died in the hospital at Burlington a little before six o'clock in the evening of February 24, 1885, having been removed there from her house, about a mile distant, about two hours previously.

When she left her house on Prospect Street to go to the hospital, she had no expectation of ever recovering sufficiently to return to the house.

For years previous to her death the testatrix had been accustomed, occasionally, to leave her house and premises alone, generally for short periods; and on such occasions she for safety, took with her the Manwell notes, such cash and securities as she had in the house, and other portable valuables, such as her watch.and jewelry, and to take them back with her to the house when she returned to it.

Before leaving the house on the occasion of going to the hospital she for safe keeping put into the hands of her male servant, who accompanied her to the the hospital, $772 of the money which she had on hand at the house, and requested him to return to the house, after he had taken her to the hospital, for her other portable valuables, consisting of said notes, and

treasury certificates, her watch and jewelry, bank books, and the remainder of the $1100.18 in money, and to bring them to the hospital where he also was to stay that night, intending, if she lived to go back to her house, to take with her several articles, including the $772 ; and the servant returned to the house, obtained the articles, and started with them for the hospital; but before he reached there and while he was on the road about midway between the house and the hospital the testatrix died.

The plaintiff insisted that by the provisions of the will he was entitled to the Manwell notes and the $1100.18. The testatrix had owned these notes for several years. They were payable to another person than the testatrix and to order, and were not endorsed.

*Hard & Cushing*, for the plaintiff.

The words " household furniture " do not so effect the words " all my personal goods and chattels," that they do not include cash and promissory notes. These words are not limited to things *ejusdem generis*. The disposition of judges of the present day is " to adhere to the sound rule which gives to words of a comprehensive import their full extent of operation, unless some very distinct ground can be collected from the context for considering them in a special and restricted sense." 1 Jar. Wills, 760. The decisions have not always been consistent with each other; but they have pretty generally been put upon the professed ground of executing the intent of the testator as gathered from the whole will, rather than upon any peculiar relation of the words. If it had been the intent to exclude from the operation of the bequest to the plaintiff this money and notes, it would have been easy by an exception, or by the use of words of narrower import, to have so indicated. Many of the cases bearing on this subject are cited and stated in Jarman on Wills, Vol. 1, 754, *et seq*. In the forest of these cases are the following, which fully sustain the proposition that there is no controlling force in the arrangement of words, and

that the doctrine of *ejusdem generis*, at the present time, has no important influence in the construction of wills, and is not alone sufficient to warrant any restriction of the import of general words. *Parker* v. *Marchant*, 1 Younge & C. Ch. 290; S. C. 20 Eng. Ch. Rep.; HOAR, J., *Browne* v. *Cogswell*, 5 Allen, 556; Lord COTTENHAM in *Saumarez* v. *Saumarez*, 4 Myl. & Cr. 331; s. c. 18 Eng. Ch. Rep.

In *Church* v. *Mundy*, 15 Ves. 396, Lord ELDON said:

"I am strongly influenced toward the opinion that a court of justice is not by conjecture, to take out of the effect of general words property which those words are always considered as comprehending."

That the $1100.18 are included in the general words used, seems entirely clear. *Popham* v. *Aylesbury*, Amb. 68; *Chapman* v. *Hart*, 1 Ves. Sen. 271; 1 Roper Leg. c. 31, ss. 1, 2; *Spriggs* v. *Weems*, 2 Harr. & M. (Md.) 266; *Green* v. *Symonds*, (Redesdal es Ms.) cited in 1 Bro. C. C. 129; 2 Wms. Ex. 1273 n.; *Hearne* v. *Wigginton*, 6 Mad. 119.

Whether the notes pass to the plaintiff under the general clause, is not, on the authorities, clear, though there are decisions to the effect that they do.

It is true, she did not *endorse* them, as the testator did in *Lock* v. *Noyes*, 9 N. H. 430; but as the Manwell notes were payable to another person than the testatrix and were never endorsed by the payee, it would have been useless for the testatrix to endorse them. The case, *Lock* v. *Noyes*, although differing from the present, in the fact that there the note was endorsed by the testatrix, is nevertheless an authority against the doctrine that a *chose in action* will not pass under a testamentary disposition similar to the one in Miss Fletcher's will.

The authorities agree that when considered in the abstract, the words goods and chattels comprehend notes. "Every kind of movables" includes bonds. *Jackson* v. *Robinson*, 1 Yeates (Pa.) 101; 2 Wms. Ex. 1274. It is stated upon apparently good authority, that if negotiable instruments are payable to bearer, or if to order, and have been endorsed, then

they will pass under the designation of goods and chattels. 1 Roper Leg.; 2 Wms. Ex. 1274; *Webster* v. *Wires*, 5 Com. 569; *Benton* v. *Benton*, 63 N. H. 289; *Cook* v. *Bosinger*, 4 Mod. 156; *Sprigg* v. *Weems*, 2 Harr. & M. 266. Certainly this distinction seems more fanciful than real. 2 Wms. Ex. 1275. We insist that the plaintiff is entitled to the $1100.18 and the notes. 6 Mass. 174.

*W. L. Burnap* and *Geo. W. Wales*, for the defendant.

Under the familiar rule for the construction of provisions of this kind in wills, neither money nor notes are included. Choses of action, not savoring of locality, do not pass under such a bequest. Wms. Ex. 1273. The bequest is not of all the personal property on the premises, but specific property is named, which designation even if it were coupled with general terms not qualified or restricted would limit these terms to things *ejusdem generis*, or herein, to things appertaining to the household affairs. 2 Wms. Ex. 1276. The general term "goods and chattels," is here modified and restricted by the word "personal" and the phrase "personal goods and chattels," is limited in its application to simply those articles peculiarly adapted to the personal use of the testatrix. "Where bequests are made by words of enumeration, followed in the same clause by collective words, or words of general description, the latter are confined to matters *ejusdem generis*." *Rawlins* v. *Jennings*, 13 Ves. Jr. 39.

In *Penniman* v. *French*, 17 Pick. 404, the words "indoor movables" were held to include only such things as were used about the house. In *Bullard* v. *Goffe*, 20 Pick. 252, the words, "all the residue of my furniture and estate whatsoever," were restricted to personal property. So it was held in *Dale* v. *Johnson*, 3 Allen, 364, that the words, "all my household furniture, wearing apparel, and the rest and residue of my personal property," did not include money, stocks, securities, or evidences of debt. It was also held in *Johnson* v. *Goss*, 128 Mass. 434, in a bequest of "all my personal prop-

erty, my household effects, horses, carriages, life insurance," etc., that notes and stocks were not included. It was ruled in *Benton* v. *Benton*, 63 N. H. 289, where the will gave to the wife " every article of household furniture, books, etc., and every other article of personal property in and about said homestead," etc., that she did not take bank shares, notes and cash. The courts extend those general expressions so as to include notes and money only, when there is no residuary clause; and this construction has been adopted to prevent intestacy. 2 Jar. Wills, 364.

The opinion of the court was delivered by

TYLER, J. The only question presented by the bill of exceptions in this case arises in construing the following clause in the will of Mary M. Fletcher, late of the city of Burlington, deceased, or rather that part of the clause which relates to the bequest of the personal estate of the testatrix :

" I give to my uncle, George L. Peaslee of Auburn, Maine, my home place on Prospect street in said Burlington, with my household furniture, and all my personal goods and chattels on said premises at the time of my decease."

The plaintiff, who is the devisee mentioned in said clause, claims that the words, " all my personal goods and chattels on said premises at the time of my decease," are operative to pass to him seven promissory notes of one thousand dollars each, which the testatrix held against one Manwell, and eleven hundred dollars and eighteen cents in money, which were in the house or " home place " of the testatrix when she died.

In giving construction to this clause we must consider all the words contained in it ; and also its relation to the other portions of the will in order to ascertain, if possible, the testatrix's real intention.

It appears by the bill of exceptions that she was accustomed to keep her promissory notes and other like securities in her house, and that at the time of the execution of this will, which was during an illness from which she did not expect to

recover, she had in her house, besides the notes in controversy, other promissory notes amounting to about eighty thousand dollars; also that she was in the habit of having certain United States bonds brought from the banks in the city, where she usually kept them, to her house, where they would remain during the day while she cut off the coupons.

It is true that the word "chattels" has a broad enough signification to include promissory notes and bank bills, and in many locations in a written instrument, it would be construed to include them; but in this case, if it had been the intention of the testatrix to bequeath to the plaintiff so large an amount of money and personal securities as was often in her house and liable to be there at her decease, it is hardly reasonable to suppose that she would have employed so general and inapt a term as "goods and chattels" for that purpose, when she obviously might have bequeathed them in unmistakable language. Had she intended to give her uncle all such promissory notes and money on hand, or any part thereof, it is fairly presumable that she would have said so plainly.

Again, we must consider all the language of the clause in question—the words, "my household furniture," as well as, "my personal goods and chattels," and determine, if we can, what relation the respective words bear to each other, whether or not the latter are restricted in their meaning by the former. The authorities on this point are numerous and somewhat conflicting; but we find that the general current of them, both in England and in this country, is, that except in residuary clauses, general words, such as "goods" and "chattels," when following after and coupled with words of a limited signification, are restricted to the same class as the former. Will. Ex. 1015, 1017, and cases cited. Thus, where the testator bequeathed to his niece all his goods, chattels, household stuff, furniture and other things, which should be in his house at A, it was decreed that cash found at the testator's house did not pass; for by the words "other things" should be intended things of like nature and species with those before

specified. *Trafford* v. *Berrige*, 1 Eq. Cas. Abr. 201. Jarman, in his work on Wills, cites the case of *Lamphier* v. *Despard*, 2 Dr. & War. 59, where a testator, after devising certain real estate to his wife, bequeathed to her all his household furniture, plate, house linen, and "all other chattel property that he might die seised or possessed of," and after various legacies he appointed A his executor and residuary legatee. Sir Edward Sugden held that "all other chattel property" meant all *ejusdem generis*, relying partly on the subsequent residuary gift. He thought, however, that the words would clearly not pass money, so that the clause could not be a general bequest of the entire personal estate.

In *Rawlins* v. *Jennings*, 13 Ves. Jr. 36, the bequest was, "unto my wife, Alice Jennings, 200 pounds per year, being part of the moneys I now have in bank security, entirely for her own use and disposal, together with all my household furniture and effects of what nature or kind soever that I may be possessed of at the time of my decease." The Master of the Rolls said : "The second question arises upon the widow's claim of the whole residue of the personal estate, as passing to her under the general word ' effects'. That claim cannot be sustained. Part of his property being particularly given to her afterwards, the word ' effects ' must receive a more limited interpretation, and must be confined to articles *ejusdem generis* with those specified in the preceding part of the sentence, *viz.* : household furniture."

In *Dole* v. *Johnson*, 3 Allen, 364, the testator bequeathed to his widow all his household furniture, wearing apparel, and all the rest and residue of his personal property. HOAR, J., in construing this clause, said : " We think the meaning of the whole will is made most consistent by restricting the word ' property ' to chattels *ejusdem generis* with those enumerated. By this construction the widow will take absolutely the household furniture, wearing apparel and other chattels in and about the house of the testator, adapted to personal use and convenience, such as books, pictures, provisions, watches, plate,

carriages, domestic animals, and the like, but not including money, stocks, securities or evidences of debt."

In *Johnson* v. *Goss*, 128 Mass. 433, where the bequest was as follows : " I give to my wife all my personal property, my household effects, horses, carriages, life insurance, etc.," the court held that this general term, " all my personal property," was not used in its ordinary sense, that the language did not purport to bequeath the residuum of the testator's property, and, construing it in connection with the words immediately following, " my household effects," etc., that the testator's purpose was to describe property of the same kind, and that he used the adjective, " personal," as descriptive of chattels of personal use and convenience, not including stocks, securities, or other productive property.

In *Benton* v. *Benton*, 63 N. H. 289, the bequest was as follows : " I give my wife every article of household furniture, books, etc., and every other article of personal property in and about said homestead or wherever found belonging to my estate ;" and under it the widow and the residuary legatees both claimed the bank shares, notes and cash on hand. The court held that the words, " every other article of personal property," were limited to the same class of things as those enumerated, and did not include the bank stock, notes and cash claimed by the widow.

Were there no residuary clause in this will, the words in question might and probably would be construed to pass this property to the plaintiff, for the reason that courts are always disposed to give the broadest meaning practicable to the words of a bequest when it is necessary to do so in order to prevent intestacy. The same is true when words of a general signification are found in the residuary clause itself, and for the same reason. Jarman, in commenting upon cases which indicate the disposition of judges of the present day to adhere to the rule which gives to words of a comprehensive import their full extent of operation, remarks, however, " that in all the preceding cases there was no other bequest capable of operating.

on the general residue of the testator's personal estate, if the clause in question did not. Where there is such a bequest it supplies an argument of no inconsiderable weight in favor of the restricted construction which is then recommended by the anxiety always felt to give to a will such a construction as will render every part of it sensible, consistent and effective."

Many of the cases cited by the plaintiff's counsel are upon the construction of residuary clauses in wills. Such is the case of *Parker* v. *Marchant*, 20 Eng. Ch. 290, where it was held that the words, " goods, chattels and effects," after an enumeration of various articles, carried the residue of the testator's property. The Vice Chancellor, in considering the point whether by these words the testator had disposed of the general residue of his personal estate or had so far died intestate, said : " This turns upon the meaning to be attributed to the words, ' goods, chattels and effects,' having regard to the position in which they are found in the will and having regard also to the whole contents of the will." Such also is the case of *Brown* v. *Cogswell*, 5 Allen, 556.

The will under consideration contains a residuary clause. After the bequest to her uncle the testatrix gave all the residue of her estate, except two small legacies, to the Mary Fletcher Hospital.

Upon these well recognized rules of construction, we hold that the words, " goods and chattels," in the connection in which they are found, should be construed as having only a restricted and limited signification and as not including said Manwell notes and cash on hand; that they are further restricted in their meaning by the word " personal," which indicates, when considered in its relations to the words, " household furniture," that the testatrix intended by the words in question to bequeath only other articles of the same kind, belonging to the house, " savoring of the locality," adapted and pertaining to her personal use. This view is sustained by the fact that no definite amount of money and notes was kept at the house. It often varied with varying cir-

cumstances, and the notes and money were carried away and brought back as the testatrix had occasion to go from or return to her home, and were being removed when she died.

. To give these words the broad meaning claimed for them by the plaintiff would be to invest them with power by which they might have defeated what seems to have been the main purpose of the will, namely, the endowment of said hospital; for, at times nearly the entire personal estate of the testatrix was in her house.

. In the view we have taken of this case the testimony of the plaintiff, received by the court below, was wholly immaterial. The result is the judgment of that court is affirmed, and certified to the Probate Court.