MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.

---

CLARK *v.* CHAPMAN.

1. PLEDGES—PERSONAL PROPERTY.

Only personal property may be the subject of pledge or bailment.

2. SAME—BAILMENTS.

A pledge is a *vadium* bailment, or the delivery of personal property to another to be held as security for some debt or obligation.

3. SAME—REAL ESTATE MORTGAGE AS PLEDGE.

A real estate mortgage before foreclosure is ranked as personal property and recognized as subject to pledge by the owner.

4. SAME.

    While a real estate mortgage as a direct contract between the original parties to it is governed by the laws of the jurisdiction in which the land it incumbers is located, its assignment and delivery with the note it secures in bailment as a pledge of personal property is a new and independent contract between other parties to be governed by the law of the place where it is made.

5. SAME—EQUITY—JURISDICTION TO FORECLOSE PLEDGE.

    On proper showing, the chancery court has authority to entertain an application by a pledgee for determination of rights between him and his pledgor, to decree a sale of the pledged property under direction of the court, imposing proper restrictions, and after the sale to inquire into its fairness and the sufficiency of the amount bid, and to reject or affirm the same.

6. SAME—SHOWING—SUFFICIENCY.

    The allegations of a bill by a resident of Michigan to foreclose a pledge consisting of a note secured by mortgage on land in North Dakota and held by him as collateral to a note given by defendant to a corporation in Chicago, and by it sold to plaintiff, which is past due and unpaid, *held*, sufficient to authorize the chancery court to assume equitable jurisdiction.

Appeal from Ottawa; Cross (Orien S.), J. Submitted April 7, 1921. (Docket No. 45.) Decided October 3, 1921.

Bill by Jarrett N. Clark against Elizabeth Allen Chapman for the foreclosure of a pledge. From an order denying a motion to dismiss, defendant appeals. Affirmed.

*Jarrett N. Clark* (*Diekema, Kollen & Ten Cate*, of counsel), *in pro. per.*

*Lillie, Lillie & Lillie*, for defendant.

STEERE, C. J. Plaintiff's bill is filed to foreclose a pledge, consisting of a note secured by mortgage on land in North Dakota and held by him as collateral to

a note given by defendant to a corporation in Chicago called the United Agency, and by it sold to plaintiff, who is a resident of Zeeland, Ottawa county, Michigan. Defendant resides in the city of Chicago, Illinois.

The bill of complaint introduces the subject with the information that prior to November 13, 1918, defendant Elizabeth Allen Chapman owed the United Agency, a corporation of Chicago, $4,950 which she reduced on that date to $2,549.75, giving a renewal note to the agency for that balance, which with indorsements thereon at the time this bill was filed is as follows:

"$2,549.75.          Chicago, Ill., November 13, 1918.
"On or before May 13, 1920, after date, I promise to pay to the order of United Agency, Chicago, Illinois, two thousand and five hundred forty-nine and 75-100 dollars, at Zeeland State Bank, Zeeland, Michigan, value received, with interest at the rate of 6 per cent. per annum.

"ELIZABETH ALLEN CHAPMAN.
"Due May 13, 1920.
(Rev. Stamps, 50c and 2c.)
(Cancelled 11-13-18. N. A.)
          (Indorsed on back.)
          6 Mo. int. pd. to 5-13-19.
"Pay to the order of J. N. Clark.
"ALBERT LAHUIS, trustee for the United Agency."

While plaintiff's bill does not connectedly relate events and leaves much to inference, it is inferable that the Albert LaHuis, a resident of Zeeland, who as trustee for the United Agency indorsed this note and assigned its collateral to plaintiff, Clark, was connected in some capacity with the United Agency of Chicago, but just how is left largely to surmise. After setting out the note of November 13, 1918, in full, showing its indorsement to plaintiff by LaHuis, the bill states that on July 19, 1918, defendant to secure her original indebtedness gave LaHuis an assignment of a note and a real estate mortgage on North Dakota lands, dated June 1, 1916, "made and executed by

Gordon Gardner, mortgagor, to J. J. Murphy, mortgagee," said mortgage having been properly recorded in Hettinger county, North Dakota, June 29, 1916, and said assignment of it by her to LaHuis on September 29, 1919.

The bill further states that on "June 6 and 7, 1918, and also at a later date" the United Agency turned over to LaHuis notes, mortgages and other securities "as trustee for said bondsmen," who with him had indorsed notes and signed bonds for the agency, by resolution of its board of directors giving him power to sell the same—

"as he deemed best for the interest of all concerned, and apply the proceeds of the same in the repayment of the loans of the company at the Zeeland State Bank, or to reimburse the said bondsmen for such amounts as they, for any reason, may have advanced or assumed."

LaHuis sold plaintiff the note indorsed as shown and assigned to him the collateral North Dakota mortgage as is alleged, "for value, before due and in the ordinary course of business."

On May 11, 1920, plaintiff sent the note to a bank in Chicago for collection, "at the written request of plaintiff's duly authorized agent" but the note was not paid when due, or since. Plaintiff then filed this bill in the circuit court of Ottawa county, Michigan, in chancery, asking that a sale of said note and mortgage be authorized, that after a stated time to redeem defendant be forever foreclosed, and if foreclosure sale is made that the proceeds be applied—

"*First*, to the payment of this proceeding and the expenses of sale; *second*, to the payment of the amount due from defendant to plaintiff; and *third*, to repay to the defendant the residue arising therefrom, if any there should be."

If the proceeds of the sale prove inadequate a de-

cree of personal liability for the deficiency is asked against defendant.

Defendant appeared and answered making a total denial with explanations and allegations, and gave notice of a motion in the nature of a demurrer to dismiss said bill of complaint on various grounds set forth in the answer, which also prays the benefit of a demurrer. The grounds of demurrer are, in substance, that plaintiff has an adequate remedy at law; has not stated a case entitling him to relief in a court of equity; foreclosure of the claimed pledge, or mortgage, held as collateral security is a matter exclusively within the jurisdiction of the North Dakota courts in the county where the land lies and proceedings are now pending there against plaintiff Clark and LaHuis to have set aside and declared void any assignment which they or either of them claim to hold of the North Dakota mortgage and note it was given to secure; the circuit court of Ottawa county, Michigan, in chancery, has no jurisdiction to decree a foreclosure or sale of such a pledge if given; that the mortgage held as collateral security by Clark if under a valid assignment, which is questioned, is as a pledge but a local chose in action relating to real estate which can only be realized upon by sale under foreclosure on the real estate in North Dakota.

The manifest purpose of this bill is, as plaintiff's counsel state, to "foreclose and sell a pledge" consisting of a "note secured by a mortgage on land in North Dakota" held by plaintiff as security for a note given by defendant to the United Agency and now owned by him. To that end a decree of foreclosure is sought analogous to the foreclosure of a real estate mortgage, giving defendant right to redeem within a specified time, etc., with contingent order of sale and personal decree, or judgment, against her for deficiency. While other incidental grounds of demurrer

are proposed, the serious and controlling question presented is the jurisdiction of a Michigan chancery court to entertain the case and grant the relief asked, in whole or in part, where the security for the claimed pledge, consisting of commercial paper, is a mortgage on real estate in a foreign jurisdiction.

Of this plaintiff's counsel contend that the bill is not to foreclose a real estate mortgage as such, does not ask "that any land, interest or estate in land be sold," that "the pledge is a promissory note given by one Gardner to one Murphy, which is secured by a mortgage on land, in North Dakota," and assert that the scope of the proceeding "is to foreclose a pledge, to authorize a sale of collateral security to satisfy a note payable in Michigan, now held by plaintiff, a resident of Michigan, in a proceeding commenced in the county of plaintiff's domicile."

Defendant's counsel emphasize the fundamental principle of jurisprudence that no State court has jurisdiction to render judgment or decree which will operate extra-territorially so as to affect the title to land in another State, and point out that even in this State bills in equity affecting interests in real estate must be filed in the county where the lands are situated in whole or in part, and a mortgage is an interest in land; and say that, if not technically for a direct foreclosure, the bill seeks decree for a public sale of this mortgage in Michigan where there is no market for it, and to foreclose all defendant's equities in the property; that such a decree inevitably affects an interest in and the title to real estate in North Dakota, and the rights of parties over whom the court has no jurisdiction.

So far as parties are concerned, the court has jurisdiction over the parties to this suit, and it certainly can render no decree affecting the rights in the land, or otherwise, of those who are not parties.

For authority to support their respective contentions counsel resort mainly to text books and decisions from other jurisdictions. But two claimed analogous decisions by this court are cited. . Plaintiff's counsel cite as analogous *Drake* v. *Cloonan*, 99 Mich. 121. The proceedings there were similar in some respects, but the pledged collateral on which a lien was sought to be foreclosed consisted of notes secured by a mortgage on real estate located in Oakland county where the suit was begun. The circuit court dismissed the bill. On appeal the decree of the lower court was reversed and a decree entered in this court for foreclosure of the mortgage. Had the instant suit been commenced in Hettinger county, North Dakota, the citation would be more directly in point.

Defendant's counsel cite, as similar in facts and sustaining their contention, *Richard* v. *Boyd*, 124 Mich. 396. In that case Boyd had an undivided one-twentieth interest in a large tract of land located in the State of New York owned by several persons in common, as the bill distinctly alleged. His interest was evidenced by a receipt for moneys paid by him on the purchase price. He subsequently assigned that receipt to complainant as security for a loan of $500 and to protect complainant in signing with him, as an accommodation maker, a $2,000 note to a bank, said note being "the proper debt of said J. A. Boyd." He also agreed to pay one-twentieth of the taxes assessed against the tract of land. He defaulted in those obligations and complainant filed a bill in Michigan to enforce such lien. He asked a decree that the receipt be sold and proceeds applied to payment of his claim, that he might purchase the same with full subrogation to the rights of defendant, praying also that—

"The interest of the said defendant to said lands, and all his rights and interests by virtue of said receipt and agreement and the subsequent understandings of

the parties, and their dealings in reference thereto, and their action in reliance thereon, including the payment of taxes with reference to such proportions, be adjudicated and decreed to be the right to have conveyance of an undivided one-twentieth part and parcel of the sum total of the said described tracts of land."

Also that, in default of the payment of the sums due, the—

"Defendant, and all persons claiming or to claim from or under him, may be foreclosed and barred of and from all equity of redemption or claim of, in, or to said agreement and contract made and delivered to him by the said Hugh Richard."

It being shown by the bill that defendant actually owned an interest in the land itself and that complainant had already secured from him a lien upon the land which the purpose of the bill was to foreclose, the suit was palpably a direct attempt to foreclose an equitable mortgage on an interest in land lying outside the State, and a demurrer to the bill was sustained. There the mortgagee was attempting to foreclose a mortgage on land outside the State and against the mortgagor who owned the same, the transaction was between the original parties, in fact and effect a direct debt owing to complainant from defendant secured by a mortgage which he gave on his own property to complainant. In the instant case the mortgagee had apparently sold and assigned the note and mortgage to defendant, who then assigned the same to LaHuis as security for her note and debt to the United Agency. The agency, by LaHuis, sold her note and assigned this note and mortgage securing the same to plaintiff, Clark, it being held by Clark under assignment for her debt which was entirely distinct from the principal, original debt created and secured by the note and mortgage.

"An ordinary absolute assignment of a mortgage with the note, made by way of security for another debt, is a pledge rather than a mortgage." Jones on Collateral Securities and Pledges (3d Ed.), § 140.

That author points out (§ 589) the remedies as follows:

"As with a mortgage so with a pledge, the creditor may upon default pursue any or all of his several remedies. The remedies upon a pledge are also similar to those upon a chattel mortgage. They are, 1, by action upon the debt secured; 2, by sale of the pledge at common law without judicial proceedings; 3, by sale under statutory provisions; 4, by sale under a decree of a court of chancery; 5, by sale under a special power of sale."

And of permissible resort to a chancery court (§ 640) says:

"A pledgee may properly enforce his lien by a bill in equity, especially when the contract of pledge neither provides for the time of redemption nor the manner and time of sale, and his rights and powers are in any manner questioned or denied. This remedy is more complete than the common law right to sell the pledge, after notice. The pledgee thereby relieves himself from ulterior questions as to the propriety of his course, and the court can act with due regard for the rights of all parties concerned."

Only personal property can be the subject of pledge or bailment, and a pledge is a *vadium* bailment, or the delivery of personal property (which includes substantially every valuable thing of a personal nature) to another to be held as security for some debt or obligation. A real estate mortgage before foreclosure is now ranked as personal property and recognized as subject to pledge by the owner. Only the dealings and rights of the parties to this suit in their relations as pledgor and pledgee are involved, or to be considered, in passing upon the jurisdiction

of equity to entertain an application to foreclose a pledge, as such necessarily to be regarded as purely personal property.

Undoubtedly the mortgage as a direct contract between the original parties to it is governed by the laws of the jurisdiction in which the land it incumbers is located, but its assignment and delivery with the note it secures in bailment as a pledge of personal property is a new and independent contract between other parties to be governed by the law of the place where it is made. 27 Cyc. p. 1282.

The general rule appears well settled that the door is open for a pledgee to apply to the chancery courts for determination of rights between him and his pledgor and for a decree authorizing sale of the pledged property under direction of the court; and the court has authority to entertain the same on proper showing, pass upon the merits of the application and, on good cause shown, may in its discretion authorize sale of the pledge, under proper restrictions imposed in advance; can after sale inquire into its fairness and the sufficiency of the amount bid, and may reject or affirm the same in the exercise of its equitable jurisdiction. 31 Cyc. p. 885. In *Cleghorn* v. *Trust Co.,* 57 Minn. 341 (59 N. W. 320), the principle is well stated as follows:

"This was always a well recognized head of equitable jurisdiction, even where the pledgee or mortgagee had a right to sell the property. The sale being under the direction and control of the court, it has the power, as it is its duty, to see to it that the property shall not be sacrificed; and hence such a sale is not liable to the evils or abuses to which a sale by a party himself is subject. Just when and under what circumstances a court would or should order a sale of commercial paper or other collateral of similar character is not necessary to consider. The right to do so, at least under special circumstances, is undoubted. Pom. Eq. §§ 164, 1231; Daniels, Neg. Instruments, § 833;

Jones, Pledges, § 655.   *Donohoe* v. *Gamble*, 38 Cal. 340."

As justifying special circumstances, counsel for plaintiff state that the original obligation to him matures considerably in advance of the pledged note and mortgage, that the contract of pledge neither provides for manner or time of sale, or redemption, and the rights under which he holds his pledge are questioned; while counsel for defendant contend that presumptions take care of the matter of sale, the fact of earlier maturity is not pleaded, and a suit is now pending between the parties in North Dakota involving the validity of the assignment of the pledge. Those and other interesting questions which counsel raise and argue are mainly matters of proof rather than pleading, for the trial court to dispose of on the hearing as the case may develop, and equity require. We think the bill, though somewhat meager in detail, considered as a whole, states a situation authorizing the chancery court to assume equitable jurisdiction.

The order overruling defendant's demurrer is affirmed, with costs to plaintiff.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.