WALNER ET AL. *v.* CAPRON ET AL.

[No. 28,182. Filed April 17, 1946. Rehearing Denied May 20, 1946.]

*Jay E. Darlington,* of Hammond, *George Cohan,* of Gary, and *Walter Myers, Jr.,* of Indianapolis, for appellants.

*Kenneth Call,* of Gary, and *Riley, Reed, Murphy & McAtee,* of East Chicago, for appellees.

GILKISON, J.—Appellant's complaint is in two paragraphs. In the first paragraph she avers that she is the equitable fee simple owner of the described real estate, and that the defendants hold a lien on the same, setting forth the facts. The prayer is for a decree determining the amount of the lien—for a right to redeem therefrom within such time and upon such terms as the court may deem just. The second paragraph is a short form action to quiet title to the real estate described.

The defendant, Capron, answered the complaint in three paragraphs, the first being in substance a general denial; the second being a denial, and an averment of ownership of the real estate involved; the third avers the facts rather fully and prays judgment for his costs.

The defendant, Capron, also filed his cross-complaint in short form to quiet his title to all the real estate involved.

Plaintiff filed a reply to each paragraph of answer and an answer to the cross-complaint, putting the cause at issue.

The finding and judgment is for the defendant on the complaint, and cross-complaint quieting his title in the real estate, and adjudging costs against plaintiff.

The essential facts as shown by the evidence are substantially as follows:

On August 24, 1929, The Superior Realty and Building Company hereinafter called Superior, was the owner of purchase price notes aggregating the principal sum of $32,000 of William E. Graham, secured by a mortage on 191 lots near Gary, Indiana. On said date it pledged said notes and mortgage to Foreman-State National Bank of Chicago as

collateral to secure the payment of a note in the principal sum of $4500 which it owed said bank. Later, the pledged notes and mortgage becoming due and unpaid, Superior sued in Lake Superior Court Room 4 on said notes and to foreclose said mortgage and in due time a decree of foreclosure was rendered thereon. Thereafter, on September 14, 1931, the Sheriff of Lake County offered said real estate for sale pursuant to the foreclosure decree, and Superior bid it in for $4500 receipting its judgment for the amount of the bid, paying the costs and causing the certificate of sale to be issued to the pledgee bank—it having sent the pledged notes and mortgage to Lake County to be filed with the papers in the foreclosure action, by its agent, who carried the certificate of sale back to the pledgee bank, and thereafter, it held the same as a pledge in lieu of the notes and mortgage so surrendered.

Superior's note to the bank was renewed several times after the bank received the certificate of sale as collateral, and Superior paid interest on it from time to time thereafter until March 31, 1934, at which time the balance due thereon was $4682. The bank continued to hold the certificate of sale as a pledged collateral to secure Superior's note. On October 27, 1936, the bank sold the certificate of sale, agreeable with the pledge agreement, to its agent, Harry Krauspe, for $3000, crediting said sum, less $12.80 expenses, on Superior's note, and assigning said certificate of purchase to its agent Krauspe, to be held by him for The First National Bank of Chicago—it having become the legal holder of said pledge and of Superior's note, by proper assignments.

On November 2, 1936, said certificate of purchase was surrendered and the Sheriff of Lake County executed a Sheriff's deed for the real estate to Krauspe,

for said last named bank, and which deed was duly recorded on November 6, 1936, in Lake County Deed Records.

On August 27, 1937, the defendant, Horace M. Capron, purchased said real estate from the last named bank for $2500. He caused the title to be examined, paid the balance due and received and accepted a quit claim deed for the lots on September 2, 1937.

The appellant, Fannie Rose Walner, having accepted a deed to the real estate involved, and an assignment of all rights in the action from Superior, was substituted as a party plaintiff and cross-defendant on June 27, 1945.

At the outset, appellee contends that no question is presented by the appeal, because the bill of exceptions containing the evidence is not properly in the record, for the reason that it has not been filed with the clerk as required by law and the rules of this court.

Rule 2-1 of this court provides:

"Chapter 76, Acts of 1937, has heretofore been abrogated. All other rules of appellate procedure and practice adopted by statutory enactment and in effect on June 21, 1937, shall continue in full force and effect, *except as herein otherwise provided.*" (Our italics.)

One of such exceptions is contained in Rule 2-3 as follows:

"Every bill of exceptions tendered prior to the filing of the transcript in the appellate tribunal shall, if correct, be signed by the judge and filed with the clerk, *which filing may be evidenced by an order book entry or the clerk's certificate.*" (Our italics.)

An examination of the record discloses on page 64 as follows:

"And afterwards, to wit, on the 3rd day. of October, 1945, the same being the 9th Judicial day of the September Term, 1945, of the LaPorte Circuit Court, the following further proceedings were had before the Honorable Lee L. Osborn, Judge, to wit:

"The Superior Realty and Building Company, a corporation,

v.                                     No. 20681

"The First National Bank of Chicago

"Comes now the plaintiff herein, and tenders bill of exceptions herein containing the evidence, which is signed and approved and ordered filed, and is in words and figures to-wit:"

Then follows pages 65 to 178, both inclusive, of the record, entitled properly and numbered No. 20681 Bill of Exceptions. Page 178 is the certificate of the trial judge, and ending with the sentence:

"And on this, the 3rd day of October, 1945, the plaintiff tendered this, her bill of exceptions, and prayed that the same might be signed, sealed, and made a part of the record in this cause, all of which is accordingly done this 3rd day of October, 1945.
                "Lee L. Osborn,
                        "Judge, LaPorte Circuit Court."

On this page as well as on page 65 is stamped:

"Filed In Open Court
"October 3-1945
                        "Clayton L. Rhoade
                        "Clerk of LaPorte Circuit Court."

The certificate of the clerk at the end of the record, among other things, is as follows:

"State of Indiana
"County of LaPorte, ss:
"I, Clayton L. Rhoade, Clerk of the LaPorte Circuit Court, in said state, do hereby certify that the

above and foregoing transcript contains true and complete copies of the following: . . .

"Entry showing filing of bill of exceptions, which clerk will embody in the transcript without copying. . . .

"Clayton L. Rhoade
"Clerk LaPorte Circuit Court,
"By Mabel Frens, Deputy."

It has been held that: "Filing consists of the delivery of a paper to the proper officer for the purpose of being kept on file by him in the proper place." *Thompson* v. *State* (1921), 190 Ind. 363, 367, 130 N. E. 412; *Goodman* v. *State* (1929), 201 Ind. 189, 192, 165 N. E. 755; *Engleman* v. *State* (1850), 2 Ind. 91; *Grabowski* v. *Benzsa* (1923), 80 Ind. App. 214, 218, 140 N. E. 76; 36 C. J. S. *Filing* 755; *Hammond, Etc., Electric Co.* v. *Antonia* (1908), 41 Ind. App. 335, 83 N. E. 766; *United States* v. *Lombardo*, 241 U. S. 73, 60 L. Ed. 897, 898.

Rule 2-3 was made for the purpose of simplifying the filing of a bill of exceptions. It provides that the filing may be evidenced by an order book entry or by a certificate of the clerk. In the instant case it is shown by the clerk's stamp, as having been filed with the clerk in open court on the date it was sealed and made a part of the record by the judge. While this may not be the best way to show a filing with the clerk, we believe it is sufficient as it conclusively shows that it was delivered to the clerk for filing and by him filed in open court on the day it was settled and sealed by the judge. In his final certificate the clerk certifies to the "Entry showing filing of bill of exceptions, which clerk will embody in transcript without copying." We, therefore, hold that the bill of exceptions is properly in the record.

The error assigned is overruling the motion for new trial. The motion for new trial is that the decision is not sustained by sufficient evidence, and is contrary to law. By this assignment the evidence must be reviewed to ascertain whether there is any evidence to sustain the judgment below.

The notes and mortgage when pledged were personal property. 41 C. J. *Mortgages* § 654, 662; 11 C. J. *Chattel* § 1, 383; *Peaslee* v. *Fletcher's Estate*, 60 Vt. 188, 6 Am. St. Rep. 103, but they had a potential power to become an equitable interest in real estate. Either would be a proper pledge as collateral surety. 49 C. J. *Pledges* § 20, 902, 903, n. 48. *Wheeler* v. *St. Paul, etc., Stone Co.* (1921), 191 Ind 75, 82, 132 N. E. 1; *Clark* v. *Chapman* (1921), 215 Mich. 518, 184 N. W. 497. We quote from page 526 of the last cited case:

> "Only personal property can be the subject of pledge or bailment, and a pledge is a *vadium* bailment, or delivery of personal property (which includes substantially every valuable thing of a personal nature) to another to be held as security for some debt or obligation. A real estate mortgage before foreclosure is now ranked as personal property and recognized as subject to pledge by the owner . . ."

However, such a mortgage has the potentiality, by the legal process of foreclosure, of maturing into a title to the real estate described in the mortgage. By mutual consent of the pledgor and pledgee the mortgage in this case was foreclosed in the name of the pledgor in the county where the mortgaged real estate is located. At a foreclosure sale on September 14, 1931, the pledgor purchased the real estate, and had the certificate of sale issued in the name of the pledgee and delivered to it to be held as a pledge in lieu of the notes and mort-

gage so foreclosed. The pledgee continued to hold the certificate of sale as a pledge, and was so holding it on October 21, 1936, when it sold it to its agent, Krauspe, under and agreeable with the pledge contract. On November 2, 1936, Krauspe, for the bank, surrendered the certificate of purchase and accepted a Sheriff's deed for the real estate, which was properly recorded on November 6, 1936. The question now presented is, can the title to the real estate pass by the sale of the matured certificate of sale agreeable with the pledge contract, or can it pass only agreeable with the mortgage laws of Indiana, where the real estate is located? With the expiration of the year allowed for redemption the certificate of sale became an equitable lien on or equitable estate in the real estate. The pledge therof as security was a pledge of an equitable interest in the real estate. However, it was still a chattel and subject to sale under the pledge agreement. *Hubble* v. *Berry* (1913), 180 Ind. 513, 518, 103 N. E. 328; *Robertson* v. *VanCleave* (1891), 129 Ind. 217, 231, 26 N. E. 899, 29 N. E. 781, 15 L. R. A. 68; 41 Am. Jur. *Pledge and Collateral Security* § 92, 650; *Blood* v. *Shepard* (1904), 69 Kan. 752, 77 P. 565.

Of course, in a sale of the pledged property the pledgee is held to absolute fidelity and a strict accounting with the pledgor or its grantee. *Eppert* v. *Lowish* (1929), 91 Ind. App. 231, 236, 168 N. E. 616, 169 N. E. 884. But no question on this subject is presented by the pleadings or evidence in this case. Appellant's contention is that the certificate of sale having been pledged to the bank, in lieu of its ancestor—the notes and mortgage—it then became an equitable mortgage and not a pledge, and therefore, must be foreclosed agreeable with the laws of Indiana. We cannot follow this reasoning. When the notes and

mortgage were pledged in writing to the bank in 1929 to secure the debt, it was only natural for the parties to anticipate a possible foreclosure of the mortgage, a certificate of sale, and a deed for the real estate. The certificate of sale was held by appellee as a pledge under the written agreement, from September 14, 1931, to October 27, 1936.

The sale at public auction was duly advertised by appellee with due notice to Superior, and agreeable with the notice, was held on October 27, 1936. The certificate was purchased by Krauspe for the pledgee for $3000, which sum, less $12.80 expenses, was credited on the note of appellant's grantor, all in strict compliance with the terms of the pledge agreement. Thereby appellant's grantor received full value for the pledged chattel, the pledge agreement was terminated, and title to the certificate of sale was vested in the bank. The certificate of sale was surrendered and a deed taken for the real estate on November 2, 1936. We think this deed vested in the bank all the title and interest in the real estate that had been owned by the mortgagor Graham, or by the appellant, Superior, or its grantee, appellant, Walner.

The rights of the pledgor and its grantee, as well as the rights of the pledgee must be tested by principles of equity. These principles are well stated in *Ferguson* v. *Boyd* (1907), 169 Ind. 537, 81 N. E. 71, 82 N. E. 1064. We quote from pages 547 and 548:

> "Where the legal title is in the mortgagee, so that it becomes necessary for the mortgagor to assert his claim of redemption on the equity side of the court, it does not admit of doubt that he must submit his claim to the testing of equity principles. His right of redemption may subsequently be lost to him by a fair contract which he

has voluntarily entered into for the surrender of such right, or it may be defeated by other facts, which, upon a consideration of the equities of the whole case, render it inequitable to accord to him the privilege he seeks." (Authorities.)

The court quoted from *West* v. *Reed* (1870), 55 Ill. 242 thus:

"The naked legal title is vested in the grantee, and if such transactions subsequently occurred between the parties as would render it inequitable that the grantor should be permitted to redeem, a court of equity will, of course, refuse to aid him, as it will always refuse its aid to perpetrate a wrong. It is wholly immaterial whether he has executed a technical release of his equitable interest to the grantee or not. He might have done that, and still be entitled to the aid of a court of equity, which looks to the substance of a transaction and not to its form. And without having done that, he may have had such transactions with his grantee as would render it inequitable to compel the grantee to suffer a redemption. In such an event, the equitable estate is practically gone or annihilated without a release, because the equitable considerations upon which it rested are destroyed by the acts of the parties, and chancery will leave the legal title where they have placed it."

The court then quoted from *Marshall* v. *Williams* (1891), 21 Ore. 268, 28 P. 137, as follows:

"Being compelled to ask the interposition of a court of equity in his behalf, he must first have the standard of equity applied to his own conduct. If that condemn him he must go out of court. 'He who comes into a court of equity must come with clean hands' is a maxim rigidly enforced and sternly applied to the conduct of every person who seeks the aid of a court of conscience. 'One who comes for relief into a court whose proceedings are intended to reach the conscience of the parties,' says Mr. Justice Wells, in Hassam v. Barrett (1873), 115 Mass. 256, 'must have that standard

applied to his own conduct in the transaction out of which his grievance arises. If that condemns himself he cannot insist upon applying it to the other party.' This rule is as applicable to a plaintiff in a suit to declare an absolute deed a mortgage and to be allowed to redeem, as in any other case, and he is under the same obligation to do equity as any other person who seeks redress in a court of equity."

From September 27, 1934, Superior answered all communications from pledgee about the matter, by its attorney, Frank H. Sparber. Prior to and at the time of the sale of the certificate of purchase by the pledgee, the pledgor not only did not object to the sale, but encouraged it. In a letter to the bank dated August 1, 1936, Mr. Sparber, the pledgor's attorney wrote:

". . . my clients . . . have come to the conclusion that they are in no position to carry this property further or to pay the interest due on it. For that reason if it will expedite your sale or aid you in clearing up your files we are willing to execute whatever release, if any, that you may need.

"I do not know anything about the terms of your offer but it is a much better one than we have been able to get on it during the last 3½ years . . . Frankly, I would advise acceptance, although it is immaterial to our clients of course."

Notice was given and the sale was had on the following October 21st, and on August 27, 1937, the bank sold the real estate to the appellee, Capron. Under these conditions we think equity is with the appellee, and that appellant is in no position to appeal to a court of equity for relief.

The judgment is affirmed.

NOTE.—Reported in 66 N. E. (2d) 64.